425 P.2d 149 (1967)
Melvin W. PETERS and Checker Cab Co., Appellants,
v.
Eleanor Rose BENSON, Appellee.
No. 721.
Supreme Court of Alaska.
March 13, 1967.
*150 Robert J. McNealy, Fairbanks, for appellants.
Robert A. Parrish, Fairbanks, for appellee.
Before NESBETT, C.J., DIMOND, J., and SANDERS, Superior Court Judge.
*151 DIMOND, Justice.
A jury awarded appellee in excess of $34,000 for personal injuries incurred when appellants' taxicab collided with the rear end of an automobile in which appellee was a passenger. Appellants contend that the trial court erred in refusing to grant their motion for a remittitur or a new trial on the basis that the damages awarded were excessive.
In speaking of a similar contention in National Bank of Alaska v. McHugh we said:
We have held that the granting or refusing of a request for a new trial is discretionary with the trial judge. We do not interfere in the exercise of that discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. In order for us to hold that the trial judge has abused his discretion, we would have to be left with the definite and firm conviction on the whole record that the judge made a mistake in refusing to order a remittitur or grant a new trial in response to appellant's motion.[1] [Footnotes omitted.]
We perceive no such mistake in this case. Appellee testified that after the accident, which took place in October 1962, she terminated her employment with Alaska Western Life Insurance Company and the United States Army Finance Corps, because she was unable to type or do bookkeeping work without experiencing a severe pain in the back part of her neck and right shoulder, that in subsequent employment as a cashier she experienced an aching sensation in the same places together with numbness in her fingers, that she took aspirin three or four times a day to alleviate the pain, and that after an 8-hour shift of typing she was too sick and in too much pain to do anything else but go to bed.
Wesley Super, a former employer of appellee, testified that appellee worked for him doing secretarial and bookkeeping duties from December 10, 1964 to January 20, 1965, that he observed that appellee appeared to be in pain when typing, that appellee told him that she had been in an accident and indicated that since then she had experienced considerable discomfort and pain in her back and shoulder when typing and suffered from severe headaches, and that she left his employment because of the pain and discomfort. While working for Super, appellee earned $500 a month.
Dr. Schaible testified that he examined appellee on November 6 and 7, 1962, that she complained of a very painful condition of her neck, right shoulder and back, particularly when she turned her neck, that muscle relaxants produced no relief, and that medical science recognizes that such symptoms could be permanent.
Dr. Haagland testified that his examination of appellee on November 21, 1962 revealed a definite tenderness on both sides of her neck, particularly the parascapular region alongside the right shoulder blade next to the spine, and that she had spasm in her neck muscles. He further testified that he saw appellee again in March or April 1963 when she complained of discomfort in her neck, and again in July 1963 at which time, although her neck was better, there was still tenderness and discomfort in the right parascapular area. Subsequent to another examination on June 11, 1965, Dr. Haagland wrote a report summarizing his findings which he read at the trial. He said:
I said in summary and conclusion in my opinion that Mrs. Benson is making a satisfactory recovery from a cervical strain and, as a residual at this time, she does have limitation of motion in the active phase to the right on rotation of the neck. She's  she's tender along the right side of her neck, and she's tender along the scapula on her right and its vertebral border. This is an area that corresponds to the distribution of C-7 or cervical 7 nerve. Her subjective symptoms *152 must be taken into consideration because cervical strain may produce prolonged symptoms.
Following this Dr. Haagland was asked if he had an opinion as to whether appellee's symptoms could be permanent. He said: "I think her symptoms would stablize and have a permanent nature at this time."[2]
Appellee had a life expectancy to age 65 of approximately 20 years. The jury could consider from the evidence presented to it that appellee would experience for the remainder of her life the pain and suffering and physical impairment she testified about. Considered as a whole the evidence of past and future pain and suffering and physical impairment was such that we cannot say that a verdict of $34,626.66 was so excessive as to require us to find an abuse of discretion in the trial court's refusal to grant a new trial or a remittitur.[3] Such a verdict, in light of the evidence we have discussed, is not indicative of possible passion or prejudice on the part of the jury.[4]
Appellants also assert that the trial court committed reversible error in not granting a mistrial following reference to insurance by two of appellee's witnesses. In describing in narrative form the extent of his physical examination of appellee and his findings, Dr. Haagland during direct examination testified that he had seen appellee on March 28, 1963. He stated as follows:
The clinical examination was good, except for tenderness in the right parascapular area. The upper extremity function was good; the reflexes were good; the finger touch was good and the Romberg was negative, and at that time I wrote a letter to the Northern Insurance Agency but someone has lost the copy of that.
Dr. Haagland continued to testify in narrative form without objection from appellants' counsel at that time. After the doctor had been excused and while the jury was absent, counsel for appellants moved for a mistrial based on the doctor's testimony to the effect that he had prepared a report and submitted it to Northern Insurance Adjusters. The trial judge denied the motion, after pointing out that appellee's counsel had not precipitated the remark and that the prevailing attitude in the courts toward preventing the jury from acquiring any notion that insurance was involved seemed to be changing.
The other instance where insurance was mentioned was during the interrogation of appellee's witness, Wesley Super, a private investigator. Super had testified, in response to cross-examination by appellants' counsel, that his past work had entailed investigation for plaintiffs in personal injury actions, that he thought he had done a little work for Mr. Parrish, appellee's counsel, but that he had done no investigative work in this particular case. On redirect examination by appellee's counsel, Mr. Parrish, the following exchange took place:
MR. PARRISH: Have you ever done any investigation work for the other side of personal injury cases?
MR. SUPER: Uh  you mean for insurance?
Q Uh  for the other side.
A Yes. Yes sir.
Appellants made no objection in front of the jury but later renewed their motion for a mistrial, stating again that the mention of insurance was prejudicial. The trial court again denied the motion.
The trial court has a wide discretion in determining whether a mistrial should be declared. As in other instances where discretionary authority is exercised, we decline to interfere other than in exceptional circumstances and to prevent a miscarriage of justice.[5] We find no reason to interfere with the trial court's discretion in *153 this case. The mere inadvertent or incidental mention of insurance before a jury in the trial of a negligence action does not automatically call for a mistrial.[6] If there is any error at all in permitting a reference to be made to insurance,[7] a point which we do not pass upon at this time, it must appear that such reference had a prejudicial effect on the result of the trial in order for there to be reversible error.[8] No such prejudicial effect is pointed to by appellants, and we perceive none. Since, as we have held, the size of the verdict was warranted by the evidence, we see no basis for assuming that the jury was influenced in their determination by the reference to insurance.[9]
Appellants claim that the court erred in allowing Dr. Haagland, in the course of his expert testimony, to vouch for appellee's character and veracity. The testimony to which appellants have reference is found in the cross-examination of Dr. Haagland by appellants' counsel:
Q Now, the references that you've made about  that she had pain in the neck and in the right shoulder and the degree of constancy of this pain, these are things that you had to take on face value from her statement, isn't that correct?
A We could substantiate it by tenderness, yes.
Q If  if you discovered a muscle spasm, but if you found no muscle spasm then you had to take her word for it that there was tenderness, isn't that right?
A Yes, I can tell by the way the patient flinches, as a rule; if they're hypertonic and hypersensitive, they may jump, but when they complain of pressure, why * * *
Q Do you recall this woman ever having jumped when you  or did she complain verbally?
A No, she's a very stable individual to examine. She's not  she doesn't exaggerate her complaints at all, but just complains of 
Q I'll move to strike that, Your Honor, on the grounds that that's. * * *
THE COURT: Well, I believe, Mr. DeLisio, you asked that question virtually and the doctor answered it.
There was no error. Dr. Haagland's statement that appellee was a stable individual to examine and that she did not exaggerate her complaints was in direct response to and had been induced by counsel's question *154 as to whether the doctor "had to take her word for it" that there was tenderness in appellee's neck and right shoulder. Where counsel by his questioning of a witness induces the witness to give certain testimony, counsel cannot thereafter complain that the testimony given, which is responsive to the question asked, is objectionable.[10]
As an additional point on this appeal, appellants contend that the court erred in limiting both appellants to a total of three peremptory challenges of the jury on voir dire, and that under Civil Rule 47(d)[11] the court should have allowed three such challenges for each of the two appellants, or a total of six.
In their brief the appellants do not direct our attention to the place in the record on appeal where the alleged limitation on peremptory challenges took place, and our review of the record fails to reveal the existence of any such limitation. In these circumstances we shall not rule upon the point made by appellants because from the record it appears there is nothing for us to review.
As their final point, appellants contend that the court erred in giving to the jury Instruction No. 5 which presupposed that appellants were negligent and were therefore liable to appellee for any damages proximately caused by such negligence.[12] Appellants state that a reading of all the testimony will show that the question of liability  appellants' negligence  should have been left to the jury to determine.
Appellants do not further elaborate on this point. From our review of the record we conclude that it has no merit. This conclusion is strengthened by the fact that appellants apparently have conceded in their brief that they were negligent,[13] and the fact that appellants did not object to Instruction No. 4 which told the jury that the court had decided as a matter of law that appellee was entitled to recover for her damages, if any, sustained as a proximate result of appellants' negligence, and accordingly, there remained for the jury's determination only the issue of such damages.
The judgment is affirmed.
NOTES
[1] Opinion No. 352, 416 P.2d 239, 244 (Alaska 1966).
[2] The trial was held in January 1966.
[3] See National Bank of Alaska v. McHugh, 416 P.2d 239, 244 (Alaska 1966).
[4] Accord, Patrick v. Sedwick, 413 P.2d 169, 175 (Alaska 1966).
[5] Meyst v. East Fifth Ave. Serv., Inc., 401 P.2d 430, 434 (Alaska 1965).
[6] See Bryar v. Wilson, 152 Conn. 162, 204 A.2d 831, 832 (1964); Waid v. Bergschneider, 94 Ariz. 21, 381 P.2d 568, 569 (1963); Muehlebach v. Mercer Mortuary & Chapel, Inc., 93 Ariz. 60, 378 P.2d 741, 744 (1963); Little v. Superior Court, 55 Cal.2d 642, 12 Cal. Rptr. 481, 361 P.2d 13, 15 (1961).
[7] For cases on this point see Pinkerton v. Oak Park Nat'l Bank, 16 Ill. App.2d 91, 147 N.E.2d 390, 394-397 (1958); Muehlebach v. Mercer Mortuary & Chapel, Inc., 93 Ariz. 60, 378 P.2d 741, 742-744 (1963); Causey v. Cornelius, 164 Cal. App.2d 269, 330 P.2d 468, 472-475 (1958); Annot., 4 A.L.R.2d 761, (1949, Supp. 1965).

We decline to rule upon this point in this case because the argument in appellants' brief is most cursory, without citation of authorities, and appellee's argument is appropriately directed solely to the point that appellants' specification of error on this matter and the argument in support do not comply with the rules of this court. See Williams v. DeLay, 395 P.2d 839 (Alaska 1964); Buza v. Columbia Lumber Co., 395 P.2d 511 (Alaska 1964); Parks v. Brown, 368 P.2d 220 (Alaska 1962); Higgins v. Lantz, 394 P.2d 776 (Alaska 1964); Crume v. Crume, 378 P.2d 183 (Alaska 1963); and Dickerson v. Geiermann, 368 P.2d 217 (Alaska 1962). See also Preferred Gen. Agency v. Raffetto, 391 P.2d 951 (Alaska 1964); Isaacs v. Hickey, 391 P.2d 449 (Alaska 1964); Meyst v. East Fifth Ave. Serv., Inc., 401 P.2d 430 (Alaska 1965); Merrill v. Merrill, 388 P.2d 259 (Alaska 1964); Thomson v. Wheeler Constr. Co., 385 P.2d 111 (Alaska 1963); and Bailey v. Fairbanks Independent School Dist., 370 P.2d 526 (Alaska 1962).
[8] Granger v. Turley, 20 Ill. App.2d 488, 156 N.E.2d 610, 612 (1959); Waid v. Bergschneider, 94 Ariz. 21, 381 P.2d 568, 569 (1963). See Bryar v. Wilson, 152 Conn. 162, 204 A.2d 831, 832 (1964); Dennis v. Hulse, 362 S.W.2d 308, 309 (Tex. 1962).
[9] Waid v. Bergschneider, 94 Ariz. 21, 381 P.2d 568, 569 (1963).
[10] See West v. Barnes, 351 S.W.2d 615, 620 (Tex.Civ.App. 1961); Choate v. Carter, 98 Ga. App. 375, 105 S.E.2d 909, 913 (1958); Cf. Oklahoma Turnpike Authority v. Williams, 208 Okl. 577, 257 P.2d 1052, 1054 (1953).
[11] Civ.R. 47(d) provides:

After all challenges for cause are completed, the parties shall make or waive their peremptory challenges. First the plaintiff and then the defendant may exercise one or more peremptory challenges alternately until each party successively waives further peremptory challenges or all such challenges have been exercised. A party who waives peremptory challenge as to the jurors in the box does not thereby lose the challenge but may exercise it as to new jurors who may be called. A juror peremptorily challenged is excused without cause. Each party may challenge peremptorily 3 jurors. Two or more parties on the same side are considered a single party for purposes of peremptory challenge, but where multiple parties having adverse interests are aligned on the same side, 3 peremptory challenges shall be allowed to each such party represented by a different attorney.
[12] Instruction No. 5 provides:

The plaintiff has the burden of proving by a preponderance of the evidence the following issues:
(1) That the negligence of the defendants proximately caused injury to the plaintiff; and
(2) The nature and extent of the injuries and damages sustained by the plaintiff which were proximately caused by the negligence of defendants.
In determining whether or not an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing on that issue regardless of who produced it.
[13] At page 11 of appellants' brief it is stated: "We admit liability to a reasonable sum in the instant case, solely to agree with the lower Court and without prejudice, to our clients."