Jack **LEWIS**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 931.

Supreme Court of Alaska.

April 7, 1969.

Brian J. Brundin and Robert C. Erwin, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellant.

Daniel A. Gerety, Asst. Dist. Atty., and Douglas B. Baily, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

On April 25, 1967, appellant, a licensed guide, was in Game Management Unit 9 on the Alaska Peninsula near the Aniakchak Crater guiding Robert Ascroft, a non-resident hunter from Berkely, Michigan. As a result of the events of that day, both appellant and his client were charged with violations of Alaska's game laws.[1] Separate trials were thereafter calendared for appellant and Ascroft. The latter forfeited his appearance bond when he failed to appear for trial in district court. Prior to the trial date scheduled in his case, appellant moved the district court for an order permitting the taking of Ascroft's deposition.[2] Appellant's motion was denied and a jury trial was thereafter commenced in district court. After the prosecution had presented its case in chief and while appellant was testifying on direct examination on his own behalf, the district judge declared a mistrial. The trial court took this action in response to a motion by the prosecution which was objected to by appellant's counsel.

After the jury was discharged, appellant moved to dismiss, with prejudice, the complaint which had been filed against him. The basis for appellant's motion was that "he has been once in jeopardy and further action or another trial would be violative of his constitutional rights against being placed in double jeopardy."[3] The district court denied the motion. Thereafter, appellant sought review in the superior court of the district court's denial of his motion for dismissal. The superior court affirmed the action of the district court and this appeal followed.[4] The issue presented in this appeal is whether the district court, as well as the superior court, erred in rejecting appellant's claim of double jeopardy on the facts of this record.

■ It is beyond dispute that jeopardy had attached in this case. In Selman v. State[5] we said:

The authorities are well settled that a defendant is considered to have been placed in jeopardy as soon as he has gone to trial and the jury sworn.

1. On May 1, 1967, a complaint was sworn out charging appellant with violation of 5 Alaska Adm.Code ch. 3, § 303.02(b). It was charged that appellant unlawfully used "an aircraft as an aid in taking a brown bear, to-wit that he did unlawfully use an aircraft for an aid in taking a brown bear in Game Management Unit 9, such aircraft not being used for transportation to a pre-existing camp or to a site for the purpose of establishing a camp."

2. Appellant grounded this motion on the fact that Ascroft had returned to the State of Michigan and that during the course of a telephone conversation had informed appellant he would be unable to attend appellant's trial which was set for August 22, 1967.

3. Art. I, § 9 of the Alaska constitution provides in part: "No person shall be put in jeopardy twice for the same offense." The Fifth Amendment to the Constitution of the United States reads in part as follows: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

4. After the superior court denied appellant's petition for review, appellant moved for reconsideration of the superior court's decision. After remand from this court, the superior court again denied appellant's motion to dismiss.

5. 406 P.2d 181, 186 (Alaska 1965).

In the *Selman* case two additional facets of the double jeopardy question were briefly mentioned. There we also said that:

> If the jury is discharged without his [the defendant's] consent he cannot be tried again. If the jury is discharged with his consent, he may be tried again.[6]

As already mentioned, the record reflects that the motion for mistrial was made by the prosecution and objected to by appellant's counsel. Thus, we are not faced with a situation where the jury was discharged before reaching a verdict with the consent of the accused. On the other hand, in *Selman* we recognized the well-established rule that the fact that an accused has been placed on trial before a competent tribunal does not, standing alone, invariably bar his reprosecution if the trial did not result in a verdict.[7] This interpretation of the prohibition against double jeopardy was articulated by Mr. Justice Black in Wade v. Hunter [8] in the following manner:

> The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. * * * What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

■ This construction of the Double Jeopardy Clause of the Fifth Amendment has been followed by federal courts and state tribunals which have had occasion to interpret their particular constitution's prohibition against double jeopardy.[9] There are numerous circumstances which have been held to permit the retrial of on accused even though the first trial jury had been discharged without reaching a verdict and without the defendant's consent. Mistrial occasioned by the jury's inability to reach a verdict has been characterized as a "classic example."[10] Discovery by the trial judge during the course of the trial that "one or more members of a jury might be biased against the Government or the

---

6. *Id.* (footnote omitted)

7. Selman v. State, 406 P.2d 181, 186 n. 18 (Alaska 1965), cited Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199, 205 (1957), where the Supreme Court of the United States said:
   At the same time jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where 'unforeseeable circumstances * * * arise during [the first] trial making its completion impossible, such as the failure of a jury to agree on a verdict.'

8. 336 U.S. 684, 688–689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949).

9. United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); Gori v. United States, 367 U.S. 364, 81

S.Ct. 1523, 6 L.Ed.2d 901 (1961); State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962), cert. denied, 372 U.S. 920, 83 S.Ct. 735, 9 L.Ed.2d 726 (1963); People v. Mills, 148 Cal.App.2d 392, 306 P.2d 1005, cert. denied, 355 U.S. 841, 78 S.Ct. 55, 2 L.Ed.2d 46, rehearing denied, 355 U.S. 886, 78 S.Ct. 147, 2 L.Ed.2d 116 (1957); Kamen v. Grey, 169 Kan. 664, 220 P.2d 160, cert. denied, 340 U.S. 890, 71 S.Ct. 206, 95 L.Ed. 645 (1950); Note, Double Jeopardy: The Reprosecution Problem, 77 Harv.L.Rev. 1272 (1964).

10. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165 (1824).

defendant" has been held to permit the discharge of the first jury and the retrial of the accused.[11] Similarly, the declaration of a first trial mistrial because of the disqualification [12] or illness of a juror [13] have been held not to bar reprosecution in the face of double jeopardy challenges.

In federal courts the test for determining what situations would justify the premature termination of an initial trial without barring retrial under the double jeopardy prohibition has been articulated in terms of "manifest necessity." This test was first formulated in United States v. Perez [14] where in a capital case the jury was discharged, without the accused's consent, after it was unable to reach a verdict. Writing for a unanimous court, Mr. Justice Story stated:

We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely

careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office.[15]

More recently the Supreme Court said in Downum v. United States [16] that:

At times the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may be subordinated to the public interest—when there is an imperious necessity to do so. * * * Differences have arisen as to the application of the principle. See Brock v. North Carolina, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456; Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 223–224, 2 L.Ed.2d 199, [204], [61 A.L.R.2d 1119]. Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches. * * * But those extreme cases do not mark the limits of the guarantee. The discretion to discharge the jury before it has reached a verdict is to be exercised 'only in very extraordinary and striking circumstances,' to use the words of Mr. Justice Story in United States v. Coolidge [(C.C.Mass.), 2 Gall 364], 25 Fed.Cas. [No. 14,858 pp.] 622, 623. For the prohibition of the Dou-

---

11. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949); Thompson v. United States, 155 U.S. 271, 273–274, 15 S.Ct. 73, 39 L.Ed. 146, 148–149 (1894); Simmons v. United States, 142 U.S. 148, 154, 12 S.Ct. 171, 35 L.Ed. 968, 971 (1891).

12. Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894).

13. United States v. Potash, 118 F.2d 54 (2d Cir.), cert. denied, 313 U.S. 584, 61 S.Ct. 1103, 85 L.Ed. 1540 (1941). In Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), tactical circumstances of the military in the field were held to justify the withdrawal of a

court-martial proceeding and the subsequent constitution of another court-martial proceeding.

14. 9 Wheat. 579, 6 L.Ed. 165 (1824).

15. See the following state authorities which have either adopted the "manifest necessity" standard or have employed criteria substantially similar to that of "manifest necessity." State v. Lanier, 205 So.2d 671, 673–674 (Fla.Ct.App.1968); People v. Anglin, 6 Mich.App. 666, 150 N.W.2d 532, 538 (1967); State v. Connors, 59 Wash.2d 879, 371 P.2d 541, 545 (1962).

16. 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 102–103 (1963).

ble Jeopardy Clause is 'not against being twice punished, but against being twice put in jeopardy.' United States v. Ball, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 [302].[17]

We adopt and apply the federal standard to the issues in the case at bar. In order to determine whether appellant's trial in district court was terminated under circumstances permitting his reprosecution, a more detailed reference to the trial proceedings is appropriate at this point.

We previously mentioned that a jury had been impaneled and the government had presented its case in chief. The district judge's declaration of a mistrial occurred during appellant's direct testimony. Appellant's counsel asked the following questions regarding Robert Ascroft, the hunter whom appellant was guiding on the day in question:

Q  Now you've testified the hunter who was with you, his name was Mr. Ascroft is that right?

A  Ascroft, yes.

Q  Is he going to be a witness here today?

A  No, I don't think so.

Q  Why not?

A  Well we tried to get a deposition, but the District Attorney wouldn't allow it.

MR. ROWLAND: Objection * * * and I think it's highly prejudicial and I think defense counsel knew it was going to be.

THE COURT: All right. Now—now this is the first I've known about any deposition not being taken and the jury will be instructed to disregard the * * * comment about any deposition.

MR. BRUNDIN: * * * we have a right to show why Mr. Ascroft is not here. There is a presumption in the evidence that witness, ah, that we should have here if they're not. * * *

The record next shows that the jury was excused. After some discussion had taken place out of the hearing of the jurors, the prosecution requested the court to declare a mistrial. Initially, the district judge denied the motion, but almost immediately thereafter declared a mistrial.[18]

We conclude that this record does not disclose a situation which presented a "manifest necessity" for the declaration of a mistrial. Nor can we find that the trial court's premature discharge of the jury was necessitated by "very extraordinary and striking circumstances." In our view any prejudice to the prosecution's case resulting from appellant's questioned explanation of Ascroft's absence could have been cured by a prompt admonition on the court's part to disregard such testimony.[19]

17. In *Downum*, the court went on to state that it would resolve any doubts as to former jeopardy in favor of liberty of the citizen.

18. In first ruling against the state, the district judge said that he would "instruct the jury to disregard any comments made concerning the objection to any deposition and we will proceed this case and the motion for mistrial is denied." After the court made this ruling, the following transpired:

MR. ROWLAND: All right Your Honor, I'd just like to state one further thing then. If you remember the defendant's comment was that the D. A. wouldn't permit the deposition to be taken. Now, do we leave that on the record too in front of the jury? I—I don't know where we stopped.

THE COURT: We have—you actually feel that the—that the—I think—I think it is prejudicial, there's no question about it that the comment that he made, unsolicited comment that the District Attorney objected had nothing to do with it. The Court denied the motion, not the District Attorney and you have I think a prejudice statement and I think I could possibly correct it, but rather than have everyone unhappy which both of you appear to be, I will grant the motion for a mistrial and you can try it all over again from the beginning.

19. As shown above, this is the course of action the district court initially pursued.

The trial court could have also permitted the prosecution to show that under the Uniform Act to Secure Attendance in Criminal Proceedings, AS 12.50.010—12.50.080, appellant had the means to secure Mr. Ascroft's attendance at trial. Additionally, it was permissible for the trial court to have informed the jury that the court, rather than the prosecution, possessed the authority and the duty to rule upon appellant's motion to take Ascroft's testimony by way of deposition and that the court, not the district attorney, had denied the motion. In short, even assuming the inadmissibility of appellant's remarks, we cannot find that this testimony created a manifest necessity for the premature termination of appellant's trial. We hold that the trial court abused its discretion in granting a mistrial.[20] We further hold that it was error on the part of both the district court and the superior court to rule that appellant's plea of double jeopardy was not controlling.

■ One facet of the double jeopardy prohibition as it relates to this case remains for disposition. The prosecution argues that since it was appellant himself who created the situation requiring the declaration of a mistrial, he thereby removed himself from jeopardy in the first trial. The prosecution supports this contention by citation to our opinion in Selman v. State[21] where we quoted from United States v. McNeil.[22] In the *McNeil* case, the initial trial was terminated as a result of a defense motion which should have been made prior to trial. There the Court said:

> When a defendant creates the situation whereby he is removed from jeopardy he thereby waives his right to plead former jeopardy at another trial of the case.[23]

*Selman* and *McNeil* are distinguishable on the basis that in the case at bar the mistrial was not requested by appellant. On the other hand, there are instances of serious misconduct on the part of an accused, or his counsel, which make permissible both the granting of a mistrial and reprosecution. Such an occasion is where the accused or his counsel attempted to tamper with the jury. In regard to the case at bar, we believe Lillard v. Commonwealth[24] is apposite. There it was said:

> Among the 'necessities' which may deprive the accused of a right to rely on former jeopardy is that the mistrial was caused by the accused 'in consequence of his own wrong or request, or by his consent.' But it is further noted that the ' "occasion for it must be very cogent, or, as some courts have said, there must be an absolute necessity." ' Moreover, 'it must be determined in each case whether or not the circumstances necessiated a discharge of the jury.'

In *Lillard,* the Kentucky court held that the accused's reference to improper evidence was insufficient in itself to deprive the accused of his constitutional right not to be subject to double jeopardy. In the words of the *Lillard* court,

> the defendant, in the presence of the jury, had referred to improper evidence he had offered to introduce. This certainly cannot be regarded as such wrongful conduct that it deprived the defendant of his constitutional right not be tried twice for the same offense.[25]

In a case involving misconduct of defense counsel, Judge Holtzoff wrote:

> Research does not disclose any case in which the granting of a mistrial for misconduct of defense counsel has been

20. *Compare* State v. Burruell, 98 Ariz. 37, 401 P.2d 733 (1965) ; People v. Laws, 29 Ill.2d 221, 193 N.E.2d 806, 808, 195 N.E.2d 393 (1963).

21. 406 P.2d 181, 186–187 (Alaska 1965) (footnote omitted).

22. 91 A.2d 849, 850 (D.C.Mun.Ct.App. 1952).

23. *See also* Brown v. State, 109 Ga. 570, 34 S.E. 1031 (1900).

24. 267 S.W.2d 712, 713 (Ky.1954).

25. Lillard v. Commonwealth, 267 S.W.2d 712, 714 (Ky.1954). *See* McCabe v. Bronx County Court, 24 Misc.2d 477, 199 N.Y.S.2d 247, 253–254 (1960).

upheld, although conceivably such action would be proper in case of misconduct going to the very vitals of the trial itself, for example, if the defendant or his counsel attempted to tamper with the jury. Minor misconduct of defense counsel, such as over-stepping the limit set by the court for the examination of a witness, does not under the authorities warrant a mistrial thereby depriving the defendant of his right to secure a verdict from the jury that had been sworn to try him.[26]

In the case at bar we cannot find that appellant's statement in response to his attorney's question regarding Ascroft's non-attendance as a witness reflects misconduct on appellant's part or on the part of his attorney.[27] Even assuming that this episode can be characterized as involving misconduct on the part of appellant, or his counsel, we believe such conduct, under the particular facts of this case, was minor and did not reach the "very vitals of the trial itself."

We believe that our dissenting colleague's reliance upon Peters v. Benson[28] is misplaced. Here, as distinguished from *Peters,* we are concerned with a criminal case involving a constitutional prohibition against double jeopardy. In contrast to civil actions different criteria are applicable in the determination of the occasions which would permit the grant of a mistrial over an accused's objection. Nor do we view the conclusions we reach today as a modification of our decision in Selman v. State.[29] For in the case at bar appellant did not move for, or consent to the premature termination of his trial. We agree that the constitutional prohibition against double jeopardy should not be construed so as to permit intentional misconduct, on the part of an accused or his counsel, to become the basis of a bar to reprosecution. Yet what we find lacking in the instant case is any manifest necessity for the court's declaration of a mistrial. On this record we cannot characterize the questioned conduct of either appellant or his counsel as intentional misconduct. Nor can we find, assuming that the disputed question and answer demonstrated misconduct, that such conduct was of so serious a quality as to deprive the accused of the constitutional protection against double jeopardy.

The judgment of the superior court is reversed with directions to remand to the district court in order to enter a judgment dismissing the complaint in the case at bar with prejudice.

26. United States v. Whitlow, 110 F.Supp. 871, 876 (D.C.D.C.1953). In regard to an accused's rights, Judge Holtzoff wrote at 872:

Ordinarily a defendant in a criminal case has the privilege, granted to him by the above-mentioned clause of the Constitution, of securing a verdict from the jury originally impaneled and sworn to try him. This guaranty is no mere technicality, but constitutes a substantial right. It not only safeguards the defendant against being put to the agony, expense, and trouble of a second trial, but it also entitles him to secure a verdict from the particular jury that has started to hear the case. This privilege may prove at times very valuable, because the defendant may feel that the jury which is trying the case may be more favorably disposed to him than some future jury might be.

27. At the time this testimony was given, its admissibility was at least arguable. Whether appellant had in fact established a camp prior to hunting for bear involved his credibility because appellant had testified that he had made a camp before Ascroft and he commenced hunting. Appellant's testimony was in conflict with that of the two fish and game protection officers who testified for the prosecution. In such circumstances, appellant's attempt to inform the jury of the reasons for Ascroft's absence was not clearly impermissible. *Compare* VIII J. Wigmore, Evidence § 2273 (McNaughton rev. 1961); Marrone v. State, 359 P.2d 969, 982–985 (Alaska 1961).

28. 425 P.2d 149, 152 (Alaska 1967).

29. 406 P.2d 181, 187 (Alaska 1965).

NESBETT, Chief Justice (dissenting).

I dissent.

In Peters v. Benson [1] this court said:

> The trial court has a wide discretion in determining whether a mistrial should be declared. As in other instances where discretionary authority is exercised, we decline to interfere other than in exceptional circumstances and *to prevent a miscarriage of justice.* (Emphasis supplied.)

This was a good rule for it gave the trial judge sufficient latitude to insure that a fair and just trial was had by *both* sides. This court would not interfere with the trial court's discretionary action except to prevent a *miscarriage of justice.* In Selman v. State [2] we said:

> When a defendant *creates the situation* whereby he is removed from jeopardy he thereby waives his right to plead former jeopardy at another trial of the case. (Emphasis supplied.)

This was likewise a good and fair rule, based on reason and respectable authority. If a defendant by his own action or conduct created the situation which resulted in removing him from jeopardy then it was only logical that he should not be permitted to take advantage of the situation of his own creation to completely free himself of the charge. If the misconduct of the defendant or his counsel during trial created a situation which, in the opinion of the trial judge, made it unfair to require the state to proceed with the trial before that jury, the trial judge had sufficient latitude in the exercise of his discretion to declare a mistrial and require the defendant to defend against the charges in a subsequent trial. The Federal and Kentucky constitutional decisions on double jeopardy, originating for the most part in capital cases where the accused's life was at stake, were not binding on Alaska's courts until made so today by the majority opinion.

The rule of *Selman* has now been changed. The defendant or his counsel, or both, may now create the situation which results in a mistrial and then plead double jeopardy to obtain an acquittal. Misconduct on the part of the defendant or his counsel, no matter how prejudicial to the state, cannot be the basis for declaring a mistrial without acquitting the defendant of the charge. The exception seems to be misconduct which reaches the "very vitals of the trial itself," such as tampering with the jury.

The protection originally intended to be provided by the concept of double jeopardy was prevention of the harassment of an accused by successive prosecutions or by the declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict.[3] I am certain that the Alaska Constitutional Convention never intended that the right would be so construed as to permit an accused to parlay his own misconduct or that of his counsel into an acquittal of the charge; nor to permit the accused to create the situation whereby he was removed from jeopardy and then take advantage of his own act to obtain an acquittal. A right which was originated to protect an accused from the state has been so refined and amplified by court decision that it now affords unwarranted protection to the accused to the detriment of the state.

In holding that the trial judge abused his discretion in declaring a mistrial the majority was presumably acting "to prevent a miscarriage of justice" under the rule of *Peters,* supra. In my opinion the effect of the majority holding is to interfere with the orderly administration of justice.

Appellant was a registered Alaska big game guide and was charged with unlawfully using an aircraft as an aid in taking a brown bear. Two protection agents of the Alaska Department of Fish and Game

---

1. 425 P.2d 149, 152 (Alaska 1967) (Footnote omitted).

2. 406 P.2d 181, 187 (Alaska 1965).

3. Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100, 102–103 (1963).

gave strong testimony in support of the state's case. Appellant's testimony was that while he was piloting his aircraft near Aniakchak Crater on the Alaska Peninsula accompanied by his hunter-client, a Mr. Ascroft of Berkley, Michigan, Mr. Ascroft became ill. Appellant thereupon landed his aircraft on a cinder patch near the snow line on the volcano crater. While they were on the cinder patch appellant spotted a bear. After a stalk which lasted approximately one hour and a half the bear was intercepted by appellant and Ascroft and shot by Ascroft.

While still under direct examination appellant was asked by his attorney whether Mr. Ascroft would be a witness at the trial that day and answered, "No, I don't think so." His attorney then asked him, "Why not?" Appellant then gave the inaccurate, unresponsive, and self-serving answer which created the basis for the state's motion for a mistrial, to wit: "Well, we tried to get a deposition, but the District Attorney wouldn't allow it." The District Attorney immediately objected stating, "Yes, and I think its highly prejudicial and I think defense counsel knew it was going to be."

The jury was excused and counsel were heard on the motion for a mistrial. Counsel for appellant insisted that he had a right to ask the question to let the jury know why Mr. Ascroft would not be present to testify. The judge then pointed out that if the testimony were admitted it would then become relevant for the state to show that although the complaint was filed on May 1, no effort was made to take the deposition of the witness in Michigan until August 15 which was one week before the trial date. The District Attorney then pointed out that it would also be relevant to show that the reason Mr. Ascroft was not present was "because he's been tried on the same charge and jumped bond and left the state." The judge denied the motion for mistrial, but reconsidered at the request of the District Attorney and granted it, stating:

I think it is prejudicial, there's no question about it that the comment that he made, unsolicited comment that the District Attorney objected had nothing to do with it. The Court denied the motion, not the District Attorney and you have I think a prejudice [sic] statement and I think I could possibly correct it, but rather than have everyone unhappy which both of you appear to be, I will grant the motion for a mistrial. * * *

The facts lend considerable credence to the District Attorney's claim that the answer was purposeful. Appellant was asked why Mr. Ascroft would not be present. Instead of stating why Ascroft would not be present, appellant gave what has the appearance of a rehearsed answer. Whether rehearsed or not, it was unresponsive, inaccurate, self-serving, and prejudicial. Appellant's improper answer resulted in the declaration of mistrial. There is no question but that appellant "created the situation," under the rule of *Selman,* which he later used to obtain an acquittal of the charge.

The majority holds that the trial judge abused his discretion in granting a mistrial. The improper answer was obviously prejudicial to the state. In my opinion the trial judge was in the best position to determine whether, in the context of the occurrence, a mistrial should have been granted. For this reason I agree with the comment of Superior Court Judge Lewis made upon affirming the action of the District Judge:

Without necessarily agreeing that I would have done the same thing in the same circumstances, I find no abuse of discretion here. The court, in acting upon the prosecution's motion for mistrial had to consider the manner in which the response was elicited, the conduct of the defendant at the time he made the statement, and this court, as the reviewing court, feels that it is wise to leave discretion in such matters to the judge who hears the case, absent a showing of clear abuse.

The majority feels that since Peters v. Benson was a civil case the rule of that decision cannot apply in a criminal case. This is not a valid distinction. Many of the rules laid down by decisions of this court apply to criminal cases as well as to civil cases. The test should be whether the rule of the decision is such that fairness to both sides will result from its application.

The rules of *Peters* and *Selman* were flexible enough to permit the court to protect the state's right to a fair trial against acts of the defendant or his counsel without violating any constitutional right of the defendant. Federal court decisions interpreting the double jeopardy provisions of the United States Constitution were not binding on this court in interpreting the double jeopardy provision of its own constitution. The fact that, as the majority states, "different criteria are applicable," is because the majority has chosen to adopt a criterion different from that previously announced in *Selman*.

I would affirm.