**Joseph R. BROWNING, Petitioner,**

v.

**STATE of Alaska, Respondent.**

No. A–550.

Court of Appeals of Alaska.

Sept. 27, 1985.

Robert Merle Cowan, Kenai, and W. David Weed, Anchorage, for appellant.

Shannon D. Turner, Asst. Dist. Atty., Thomas Wardell, Dist. Atty., Kenai, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Joseph R. Browning was charged with driving while intoxicated, refusal to submit to a breathalyzer, and resisting arrest. At his trial on April 9, 1984, he took the stand and testified, *inter alia*, that he noticed a police car behind his vehicle, and for this reason was driving with some care. The following exchange then occurred.

Defense counsel: The officer has given a description here saying that you were essentially all over the road. . . .

Browning: Well, that's not the way it was.

Defense counsel: Okay and you were watching him back behind you. Was there any other reason why you were driving very carefully under the circumstances?

Browning: Well, yes. I can't, I can't afford too many tickets. I sure can't afford to get pulled over for another DWI, 'cause I could lose my license for ten years, and I'm a truck driver.

Defense counsel: Okay.

District Attorney: Your honor, I have an objection to make. I wonder if the jury could step out.

After the jury left the courtroom, the district attorney moved for a mistrial on the grounds that defense counsel had elicited entirely inappropriate and prejudicial testimony from the defendant. Defense counsel argued that the testimony was perfectly admissible, in that it showed the defendant's state of mind at the time he was driving, which made it more likely that he was driving carefully. Magistrate Brigitte McBride granted the motion for mistrial over defense counsel's objection.

Browning subsequently moved to dismiss the charges against him on double jeopardy grounds. Magistrate McBride issued an order denying the motion on June 27, 1984. The order stated in part:

In the instant case the court finds that defendant's double-barrelled appeal to the jury's pity, by improperly testifying to an expected penalty and to the fact that such penalty would, in effect, ruin his livelihood as a truck driver, was serious misconduct on the part of the accused, or his counsel. The court further considers the only possible alternate remedy to declaring a mistrial, namely instructing the jury to disregard the above-cited testimony, to be insufficient and ineffective to assure this state of a fair trial.

The reference to "serious misconduct" is from the Alaska Supreme Court's opinion in *Lewis v. State*, 452 P.2d 892, 897 (Alaska 1969), where the court stated:

On the other hand, there are instances of serious misconduct on the part of an accused, or his counsel, which make permissible both granting of a mistrial and a reprosecution.

Browning's counsel requested an evidentiary hearing on the matter, in order to establish that there had been no misconduct. Browning took the stand at the evidentiary hearing, and testified that, although he and his attorney had discussed the fact that Browning had been driving carefully because of concern about his livelihood, they had not discussed using that fact at trial. Browning also testified that his attorney had never told him that it was improper to testify to anything, including the penalties he was facing if convicted. The magistrate remained convinced that there had been some misconduct, so she refused to change her order. Browning petitioned for review of the magistrate's order, and we accepted jurisdiction.

Browning argues that the testimony was not improper, and that there was no basis for the court's finding of misconduct, or if there was misconduct, it was so minor that it did not justify declaration of a mistrial.

While we do not agree that the testimony elicited by Browning's counsel was proper or admissible, we hold that the testimony was not so prejudicial to the state's case that the magistrate was justified in declaring a mistrial. The charges against Browning should therefore have been dismissed on double jeopardy grounds.

Under the Alaska and United States Constitutions, jeopardy attaches when a defendant is placed on trial before a court of competent jurisdiction and a jury sworn. If the court discharges the jury without a verdict being reached, the defendant cannot be retried unless he consented to the discharge or "manifest necessity" required it.

*Koehler v. State*, 519 P.2d 442, 448 (Alaska 1974) (footnote omitted). *Accord Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *Lewis v. State*, 452 P.2d 892 (Alaska 1969).

*Lewis* also involved a mistrial declared during the direct examination of the accused. Lewis was a licensed guide charged with violation of game laws. When asked why the hunter who was with him at the time of the offense was not going to be a witness, Lewis testified that "we tried to get a deposition, but the district attorney wouldn't allow it." 452 P.2d at 896. A mistrial was granted over Lewis's objection, and Lewis moved unsuccessfully for dismissal of the charges. In analyzing Lewis's claim, the supreme court noted that the double jeopardy clause of the fifth amendment does not bar retrial every time a jury is discharged before reaching a verdict. The court went on to adopt and apply the "manifest necessity" standard. The court concluded:

> this record does not disclose a situation which presented a "manifest necessity" for the declaration of a mistrial. Nor can we find that the trial court's premature discharge of the jury was necessitated by "very extraordinary and striking circumstances." In our view any prejudice to the prosecution's case resulting from appellant's questioned explanation of [the hunter's] absence could have been

cured by a prompt admonition on the court's part to disregard such testimony.

452 P.2d at 896 (footnote omitted), quoting *United States v. Coolidge*, 2 Gall. 364, 25 F.Cas. 622, 623 (C.C.Mass.) (No. 14858) (1815), *quoted in Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963).

After holding that the trial court abused its discretion in granting a mistrial, the court stated:

> One facet of the double jeopardy prohibition as it relates to this case remains for disposition. The prosecution argues that since it was appellant himself who created the situation requiring the declaration of a mistrial, he thereby removed himself from jeopardy in the first trial.

452 P.2d at 897. The prosecution's argument was based in part upon the statement in *Selman v. State*, 406 P.2d 181, 186–87 (Alaska 1965), that "when a defendant creates the situation whereby he is removed from jeopardy he thereby waives his right to plead former jeopardy at another trial of the case." The court in *Lewis* distinguished *Selman* and cases like it on the grounds that they involved mistrials requested by the defendant. "On the other hand," said the court, "there are instances of serious misconduct on the part of an accused, or his counsel, which make permissible both the granting of a mistrial and reprosecution. Such an occasion is where the accused or his counsel attempted to tamper with the jury." 452 P.2d at 897. The court concluded, however, in the case before it, that even if there had been misconduct on the part of appellant or his counsel, any misconduct was minor and did not reach the "very vitals of the trial itself." *Id.* at 897–98, *quoting United States v. Whitlow*, 110 F.Supp. 871, 876 (D.D.C.1953).

In this case, the magistrate appears to have focused on the misconduct portion of the court's opinion in *Lewis*. She never used the phrase "manifest necessity," and the only portion of *Lewis* cited in her order was the section on misconduct. There is no requirement that courts make an explicit

finding of "manifest necessity" before deciding to declare a mistrial. Yet the record must still disclose some basis for concluding that there was "manifest necessity" at the time the mistrial was declared. *Arizona v. Washington,* 434 U.S. at 516–17, 98 S.Ct. at 836. *See also Koehler v. State,* 519 P.2d at 449.

■■■ We hold that the record in this case would not support a finding of "manifest necessity." The "double-barrelled" prejudice suffered by the state when Browning testified about the penalty and its potential impact on his ability to earn a living was certainly clear enough to justify exclusion under Evidence Rule 403, had Browning's attorney applied for a ruling before eliciting the testimony. Yet the prejudice may have been counterbalanced by Browning's admission that he had previously been convicted of DWI. As for Browning's livelihood, the jurors already knew that Browning was a truck driver, and they could easily have drawn the inference made plain by Browning without his help.

The magistrate concluded in her subsequent written order that instructing the jury to disregard Browning's testimony would have been insufficient to assure the state of a fair trial. Yet this conclusion was not reached with the "manifest necessity" standard in mind, nor was it even stated when the court declared the mistrial.[1] Even had Browning not referred to punishment, the jury would have been instructed shortly after Browning's testimony that it was not to discuss or consider the subject of penalty or punishment in any form. Alaska Pattern Jury Instruction No. 1.55. We must assume that if the jury had been told to disregard Browning's testimony, and then twice told that it could not consider punishment, the prejudicial effect complained of by the state would have been substantially diluted. *See Lewis v. State,* 452 P.2d at 896.

The state relies upon the United States Supreme Court's decision in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Washington was convicted, but given a new trial because the prosecutor had withheld exculpatory evidence from the defense. At the beginning of the second trial, defense counsel told the jurors at *voir dire* and during his opening statement that the prosecutor had purposely hidden evidence earlier in the case. 434 U.S. at 498–99, 98 S.Ct. at 827, 54 L.Ed.2d at 724. He also stated that the state supreme court had ordered a new trial because of this "misconduct." The prosecutor moved for mistrial after opening statements were completed. Defense counsel argued that he should be able to introduce the fact that a new trial had been granted, and the reason for granting a new trial, but he cited no authority for this. The trial court held that such evidence would not be admissible, and stated that while he was quite concerned about the double jeopardy problem, he had no real choice but to declare a mistrial. The Supreme Court agreed, concluding that the trial judge's

---

1. We do not suggest that the magistrate was under a duty to make a ritualistic finding of manifest necessity before her decision to grant a mistrial could be upheld against a claim of double jeopardy. Far from making such a suggestion, we recognize that there are many situations in which the existence of manifest necessity to terminate a trial will be apparent from the record, without any explicit finding by the trial court.

The point of our holding is that, in this case, the contemporaneous record of the trial court's initial, verbal ruling granting a mistrial does not give rise to fair inference that the mistrial was declared out of manifest necessity. In this regard, we view the *post hoc* conclusions of the magistrate concerning manifest necessity to be of little assistance, since they were made well after the mistrial had been declared, when the matter was *fait accompli.*

Moreover, even if it were clear that the correct standard had been applied at the outset, the record would not support a finding of manifest necessity, particularly because Browning's remark was potentially as prejudicial to himself as it was to the state. To permit a retrial under the circumstances of this case would open the door to a retrial any time a defendant or his counsel made a routine, good faith, but obvious mistake in conducting examination or presenting evidence at trial. In particular, the view espoused by the dissent would render trial court rulings granting mistrials to the state virtually unreviewable.

finding was tantamount to a finding of "manifest necessity." 434 U.S. at 516–17, 98 S.Ct. at 836, 54 L.Ed.2d at 735.

We view the prejudice suffered by the state of Arizona in *Washington,* to be significantly greater than the prejudice suffered by the state of Alaska in Browning's case. Washington's attorney successfully painted a picture of a vindictive and overzealous prosecutor's office, committed to prosecuting his client despite having its hand slapped by an appellate court for trying to hide evidence. The attorney's words were calculated to instill in the jury hostility towards the prosecutor, as well as to create speculation that the prosecution may have continued to withhold evidence. When contrasted with the potential for prejudice created by a DWI, defendant's reference to his possible loss of livelihood, in an era of tremendous concern about drunk driving, it is clear that the prosecution in *Washington* would have been laboring at a much greater disadvantage.

We conclude that the state's interest in a fair trial was not so impaired that Browning's "valued right to have his trial completed by a particular tribunal, which he might believe to be favorably disposed to his fate," (*Koehler v. State,* 519 P.2d at 450 (Erwin, J., dissenting), *quoting Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed.2d 974, 978 (1949)), should have given way.

■■■ Of course, under the trial court's reading of *Lewis,* there remains the possibility that Browning waived his double jeopardy claim through his own misconduct or that of his attorney. "[T]he constitutional prohibition against double jeopardy should not be construed so as to permit intentional misconduct on the part of an accused or his counsel to become the basis of a bar to reprosecution." *Lewis v. State,* 452 P.2d at 898. Yet there was no basis for any finding that there was intentional misconduct on Browning's part, since there was absolutely no evidence that he knew his testimony would be improper. As for Browning's attorney, while it is clear from his argument at trial that he purposely

solicited the testimony from Browning, he did so in the belief that it was admissible. While the claim of admissibility was quite weak (*cf. Lewis v. State,* 452 P.2d at 898 n. 27), it was apparently pursued in good faith, and there was no attempt to subvert the trial itself. Under these circumstances, the finding of "serious misconduct" as that term is used in *Lewis* was clearly erroneous. Thus, even under the magistrate's reading, a mistrial was not justified.

The order of the trial court is REVERSED.

SINGLETON, Judge, dissenting.

Whether to grant or deny a motion for mistrial is a matter committed to the trial court's sound discretion. *Lewis v. State,* 452 P.2d 892 (Alaska 1969), *Roth v. State,* 626 P.2d 583 (Alaska App.1981). Where the state moves for mistrial and the defendant opposes the motion, the trial court must find "manifest necessity" before granting the mistrial. *Lewis,* 452 P.2d at 895–96. It is not necessary, however, that the trial court utter the magic phrase "manifest necessity." *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). In context, "manifest necessity" means that the prosecution has suffered prejudicial error as a result of the defendant's actions and the prejudice cannot be cured by a continuance or an admonition to the jury. If the trial court finds prejudicial error and further finds that a continuance or admonition would be insufficient to cure the error, then "manifest necessity" has been established, a mistrial may be ordered and the defendant may be tried again. Since the trial judge is present and has the opportunity to observe the alleged error's impact upon the jury, we should not substitute our judgment for that of the trial court's. Rather, we should apply an abuse of discretion standard, and determine whether a reasonable judge could have concluded on the record that prejudicial error had been suffered and that a continuance or admonition would have been insufficient to correct the prejudice.

Applying this test to the undisputed facts of this case, it is clear that the trial court did not abuse its discretion in granting a mistrial. It is clearly error for a witness to refer to possible punishment in connection with his testimony. *See Martin v. State*, 664 P.2d 612, 618–19 (Alaska App. 1983). In context, Browning's testimony was a blatant plea for sympathy. It is unlikely that a continuance could have cured the problem. The question then becomes whether a jury admonition would have been sufficient. Under the circumstances this was a decision for the trial court to make. We are hardly in a position to recreate from a cold record the circumstances as they existed at the time the trial court ruled. This case, like others in a disturbing series,[1] illustrates again this court's penchant for substituting its judgment for that of the trial court in reviewing matters committed to trial court discretion. In so doing, the court loses sight of the proper boundaries between trial and appellate courts and passes beyond the realm of its expertise. I would affirm the decision of the trial court.

---

1. *See, e.g., Johnson v. Fairbanks*, 703 P.2d 442, (Alaska App.1985) (Singleton, J., dissenting); *Jackson v. State*, 695 P.2d 227, 233–37 (Alaska App.1985) (Singleton, J., dissenting); *Williamson v. State*, 692 P.2d 965, 974 n. 1 (Alaska App.1984) (Singleton, J., dissenting); and *see generally* Wright, *The Doubtful Omniscience of Appellate Courts*, 41 Minn.L.Rev. 751 (1957).