(No. 35943.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT MAYS, Plaintiff in Error.

*Opinion filed January 23, 1962.*

RICHARD J. FLANDO, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant Robert Mays was indicted on a charge of rape, was found guilty by a jury in the criminal court of Cook County, and sentenced to the penitentiary for a term of 25 years. He brings this writ of error contending that

he was twice put in jeopardy for the same offense in violation of his constitutional rights, and also that he was not proved guilty beyond a reasonable doubt.

Defendant was first placed on trial on this indictment before a jury on June 25, 1958, in the courtroom of Judge Walker Butler. After the evidence and arguments had been heard, and after the jury had been instructed and had retired to consider their verdict, Judge Butler found it necessary, for reasons of other business, to absent himself from the courtroom, and he requested Judge Henry C. Dieringer, a judge of the same court, to receive the verdict of the jury in his absence. The jury had deliberated four hours without reaching a verdict, whereupon Judge Dieringer called the jury to the courtroom and asked the foreman: "Without telling me how you stand, will you give me your opinion as to whether or not you can arrive at a verdict in this case?" The foreman replied: "No sir, I don't believe we can." Judge Dieringer then asked: "Is it your opinion that the jury is hopelessly deadlocked?" to which the foreman replied, "I honestly believe it is, yes, sir." Judge Dieringer then stated: "In that event the court will declare a mistrial," and he directed the clerk to withdraw a juror, and dismissed the jury.

The common-law record of the second trial recites, with reference to the proceedings in the first trial when the jury had failed to agree on a verdict: "And by agreement between the State's Attorney, counsel for the people, and the said defendant and his counsel, now here given in open court, it is ordered that the aforesaid jury be discharged from the further consideration of this cause."

In the supplemental record, which consists of stenographic transcript of so much of the first trial as pertains to the discharge of the jury, there appears a colloquy between Judge Dieringer, the Assistant State's Attorney, and the defense counsel, as follows:

"Mr. Winn (Assistant State's Attorney): Your Honor,

can I ask the court to hold this case on the call until tomorrow morning?

The Court: Yes, please hold it until tomorrow morning.

Mr. Marks (Defense counsel): I have a rather busy schedule in the morning. Mr. Winn, can we hold it on the call until sometime next week?

Mr. Winn: Any day you want.

Mr. Marks: Tomorrow morning is bad for me.

The Court: Pick your own date.

Mr. Marks: Let's hold it on the call until next Monday or Tuesday, will you, please.

The Clerk: That is by agreement, continued to July 1st."

The case did not go to trial on July 1, 1958, but instead the defense counsel presented a motion to discharge the defendant on the ground that Judge Dieringer did not have authority to pose the question whether the jury could agree and that he did not have authority to declare a mistrial. This motion was supported by an affidavit of Marshall Patner, one of the lawyers who represented the defendant in the first trial. This affidavit recites, *inter alia,* that when Judge Dieringer stated that he was going to call the jury to ask the foreman whether the jury was dead-locked the attorneys for the defendant stated that they were not in favor of such action. The motion to discharge the defendant was argued and was denied by the court.

On August 11, 1958, defense counsel presented an amended motion to discharge the defendant supported by a similar affidavit of Marshall Patner. This motion was also denied. The case was then set for trial and tried on October 6, 1958, before Judge Harold P. O'Connell, and at the conclusion the defendant was convicted by the jury.

The defendant now contends that the first jury was improperly discharged because a reasonable time had not elapsed during which the jury could reach a verdict, and because Judge Dieringer had no discretion or authority to

discharge the jury and that consequently the second trial placed the defendant in jeopardy a second time for the same offense.

We do not think a court errs in discharging a jury when it is apparent it is hopelessly deadlocked. In the case of *People* v. *DeFrates,* 395 Ill. 439, cited by the defendant, a jury was dismissed after three days of trial when it had deliberated only 45 minutes. In the *DeFrates* case we held that the law has invested courts of justice with the authority to discharge a jury from giving any verdict whenever, in the court's opinion, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. Courts are to exercise a sound discretion on the subject and it is impossible to define all the circumstances which would render it proper to interfere. We are of the opinion that such a discharge constitutes no bar to further proceedings and gives no right of exemption to the prisoner from being again put upon trial. This principle had previously been stated in *United States* v. *Perez,* 9 Wheat. 579, 6 L. ed. 165, and *Dreyer* v. *Illinois,* 187 U.S. 71, 47 L. ed. 79. From an examination of the entire record in this case, we cannot hold that the trial court abused its discretion in discharging the jury.

Additionally, counsel for defendant argues that receiving the verdict of the jury or, failing a verdict, dismissing the jury is a nondelegable duty and that because Judge Butler assigned this task to Judge Dieringer, error was committed. Defendant cites *Durden* v. *People,* 192 Ill. 493, and *Meredeth* v. *People,* 84 Ill. 479, as authority for his contention that only the particular trial judge who heard the case may dismiss a jury. In the *Durden* case it was held to be error when a circuit court judge heard the evidence and a portion of the closing arguments and then vacated the bench, not to return. In the *Meredeth* case the judge was absent from the courtroom during the trial, and during his absence his place upon the bench was occupied suc-

cessively by two members of the bar, and it was held to be error for the judge before whom a case was on trial to leave the courtroom while the cause was being argued before the jury and that the judge should not even by consent of the parties be elsewhere employed. To the same effect is the case of *Thompson* v. *People,* 144 Ill. 378, which holds that the presiding judge may not leave the courtroom and engage in other business during the argument before the jury.

We do not disagree with these decisions in the light of the extreme situations there involved, but we think that the expression in the *Durden* case that plaintiff in error was entitled to the judgment of one judge up to the time of the retirement of the jury to consider their verdict is the rule to be adduced from these cases. Under the circumstances here present, we do not believe that prejudice resulted to the defendant from the substitution of one judge for another after the trial of the cause had actually been completed.

We note that in his brief and argument and his memorandum in support of motion for discharge, the defendant frequently states that he objected to Judge Dieringer's actions and that without the consent of the defendant and over his protests Judge Dieringer declared a mistrial. This does not comport with our examination of the record. We have quoted the only available pertinent portions of the record, from which it appears that counsel for defense did not object to the appointment of Judge Dieringer to receive the verdict of the jury, and did not object to the discharge of the jury but acquiesced therein. The only intimation that defense counsel objected to the procedure is found in the affidavit of Marshall Patner attached to the memorandum which we have previously quoted. We are of the opinion, as we said in *People* v. *Ford,* 19 Ill.2d 466, that the defendant may not sit idly by and allow alleged irregular proceedings to occur without objection, and afterward seek to re-

verse his conviction by reason of those same irregularities.

For the reasons stated we do not think the defendant's contention that he was twice placed in jeopardy is well founded.

The defendant's next contention, that he was not proved guilty of rape beyond a reasonable doubt, requires us to examine the record, in order to ascertain the facts.

The victim testified that the defendant entered her bedroom in the nighttime and committed three acts of rape, two acts of sodomy and a series of acts of sadistic nature, some of which were inflicted while she was tied, gagged and bound with strips torn from a bed sheet. She was found the next morning by a neighbor who released her. She was examined by two doctors, one in the morning, and the other in the afternoon, the first of whom testified that he observed abrasions of the vagina, and the second of whom testified that he marked his medical card with "questionable rape." The evidence further reveals that the assailant also stole a number of items from the victim's apartment, and about two months after the crime, the victim's watch was found in a pawnshop, and detectives thereafter discovered that the defendant had pawned it.

The defendant claims that the victim did not make prompt complaint of the outrage, but the chronology discloses that she went to see Dr. Hinkson between 6:00 and 7:00 A.M.; that she went to the police station between 8:30 and 9:00 A.M., and that she gave a statement to the police at 10:30 A.M. We have held in *People* v. *Ristau,* 363 Ill. 583, and *People* v. *Mason,* 301 Ill. 370, that there is no definite limit of time within which complaint must be made. We are of the opinion that the victim here complained at the first opportunity. The delay of a few hours is easily understood.

The defendant also contends that, in her statement to the police, the victim stated that she was blindfolded the entire time, and could not identify her assailant, but that

she nevertheless selected him from several other men at a police line-up. Under cross-examination, the victim stated that she had indeed made such a statement, but that she did so because at the time the defendant was still at large, and she feared further attacks. Her testimony that she was not blindfolded with the bed sheet until after at least one of the acts of rape seems to be credible, and she was thus afforded an opportunity to see the defendant. The defendant admitted that he knew the victim, and had visited a relative in the same building previous to the criminal act.

The jury has determined within its province, the credibility of the witnesses and the weight to be attached to the evidence presented. We cannot say, from the whole record, after considering the evidence as it was presented to the jury, that the defendant was not proved guilty of rape beyond a reasonable doubt, and therefore the conviction in the criminal court of Cook County is affirmed.

*Judgment affirmed.*