**Keith Carson HINES, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 8407.**

United States Court of Appeals
Tenth Circuit.

Aug. 31, 1966.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Keith Carson Hines, submitted on brief pro se.

Richard T. Spriggs, Asst. U. S. Atty., Denver, Colo. (Lawrence M. Henry, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before LEWIS and SETH, Circuit Judges, and LANGLEY, District Judge.

SETH, Circuit Judge.

Appellant was charged with carrying on the business of a retail liquor dealer without paying the tax required of such dealers, in violation of 26 U.S.C.A. §§ 5121 and 5691. The jury found the appellant guilty of the charge, and this appeal has been taken.

The record shows that a Treasury Department agent purchased a pint of whiskey from appellant at a residence on the night of February 14, 1965. At the time of this purchase the appellant poured the whiskey from a quart bottle into a pint bottle which was purchased by the investigator. There were eight or ten people on the premises at the time, and when the investigator was asked about conditions on the premises and whether there was a "spirit of party atmosphere about the place," he an-

swered that there was. Another investigator for the Treasury Department also purchased whiskey from appellant on the same premises the same night. He went there in the company of two other men hired for the purpose and was introduced by one of them to the appellant. At this time the appellant again filled a pint bottle with whiskey from a quart bottle. The investigator, his two companions, and the appellant each thereafter drank from the purchased whiskey, and had a conversation of fifteen or twenty minutes' duration. Two days later (February 16) another investigator went to the same residence, identified himself as an investigator of the Internal Revenue Service, and advised the appellant he was required to buy a retail liquor dealer's tax stamp if he was in the business of selling liquor. Appellant then denied he needed such a stamp. On February 21, the investigator of the Treasury Department who made the purchase on February 14, accompanied by another man, returned to the same premises and purchased a pint of Scotch whiskey which was delivered to him in an old Bourbon bottle. The witnesses who testified did not observe any stock of whiskey on the premises other than the quart bottles referred to above.

The appellant asserts that the trial court committed error in denying his motion for acquittal for the reason that the evidence of the Government did not show that the appellant was engaged in the business of selling liquor, but on the contrary showed only "friendly accommodation" to the investigators and their companions, or at the most three isolated sales, two of which were on Sunday. Appellant further asserts that the fact that the sales took place in the residence, that smaller bottles were filled from a larger, and the "party atmosphere" were not consistent with a "business operation."

Secondly, the appellant asserts that the court was in error in failing to instruct the jury on the issue of entrapment, as he requested, and in having the jury

separate after the case was submitted to it and deliberations had taken place for about an hour and a half without a verdict having been reached.

■ The record fully supports the action of the trial court in refusing to direct the verdict of acquittal. The issue is, of course, whether or not the appellant was a person who carried on the business of a retail dealer in liquors and who wilfully failed to pay the special tax as required by law. The witnesses testified to three separate purchases from appellant on different occasions, the third purchase following advice to the appellant that if he was in the business of selling liquor, a stamp would be required. The evidence does not show a business atmosphere on or about the residence, but the evidence of the three separate purchases with few preliminaries is sufficient to demonstrate that the trial court was correct in refusing appellant's motion for acquittal. He was carrying on the business within the meaning of the statute. James v. United States, 309 F.2d 744 (10th Cir.); Woodland v. United States, 347 F.2d 956 (10th Cir.).

■ As to the issue of entrapment, we find no evidence in the record which raised the issue of entrapment to require the trial court to give an instruction thereon. The evidence shows that the agents were accompanied by various persons who may or may not have been acquainted with the appellant, but there are no circumstances which would serve to raise the issue. Wood v. United States, 317 F.2d 736 (10th Cir.); Maestas v. United States, 341 F.2d 493 (10th Cir.); Lucas v. United States, 355 F.2d 245 (10th Cir.).

On the issue relating to the separation of the jury following the submission of the case, the appellant appears to take the position that the fact of directing the jury to separate after it had commenced its deliberations is alone error. There is no showing of actual prejudice or the showing of any special circumstances from which a prejudice might

arise by reason of the separation of the jury.

As to the details on this point, the record shows that the jury commenced its deliberations at about four o'clock in the afternoon and continued until 5:30 p. m., when the court had the jury return to the court room, and upon inquiry was advised that the jury had not reached a verdict. The jurors were questioned generally, and apparently none wished to continue their deliberations and the court thereupon recessed until the following morning. On the following day the jury met at 9:30 a. m. in the jury room without first entering the court room. About fifteen or twenty minutes after this meeting commenced the jury proceeded to the court room and advised the court that a verdict had been reached.

■ Procedures have developed over the years to protect the jury in its deliberations from any interference. While the jury is together it is under the protection of officials of the court, and is provided facilities of varying degrees of seclusion. The possibility of interference, deliberate or inadvertent, is, of course, increased when the jury separates. Reason dictates however that the jury be allowed to separate under the proper circumstances, and the best that then can be done is to admonish the members. The trial court must be guided in its action by a comparison of the alternatives in the light of the circumstances surrounding the trial and the parties. Both the defendant and the public have an interest that risks be not unnecessarily created. These interests must both be considered by the trial court. The position of a defendant may be revealed by his express consent to a separation of the jury as in United States v. DiFronzo, 345 F.2d 383 (7th Cir.). The Seventh Circuit has apparently taken the position in criminal cases that once having commenced its deliberations, the jury, absent the express consent of the accused, cannot separate; United States v. D'Antonio, 342 F.2d 667; United States v. Panczko, 353 F.2d

676; however, we do not so hold. Instead we hold that the trial court has full discretion in determining whether the jury shall be allowed to separate at any particular time during the course of the trial or thereafter in accordance with Lucas v. United States, 275 F. 405 (8th Cir., Colo.1921); Odell v. Hudspeth, 189 F.2d 300 (10th Cir.); Brown v. United States, 69 App.D.C. 96, 99 F.2d 131; Koolish v. United States, 340 F.2d 513 (8th Cir.).

■ There is no showing in the case at bar that any circumstances existed which would in any way indicate there was an abuse of discretion on the part of the trial court in allowing the jury to separate. The mere fact that the jury was allowed to separate, as it was, certainly does not show such an abuse. Counsel for the appellant made no objection to the action of the trial court in ordering the overnight recess, but the existence or absence of such objection is not decisive. We may however take the absence of objection to indicate that on the part of appellant's counsel he felt no unusual circumstances to be present whereby the court's action would prejudice his client.

Affirmed.