James F. KOEHLER, Petitioner,

v.

STATE of Alaska, Respondent.

No. 1865.

Supreme Court of Alaska.

Feb. 22, 1974.

Herbert D. Soll, Public Defender, Lawrence J. Kulik, Asst. Public Defender, Anchorage, for petitioner.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for respondent.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Chief Justice.

The principal question in this appeal concerns the right of petitioner James Koehler to be present at all stages of a criminal proceeding. Since the factual context out of which the petition arises is of considerable significance, we deem it appropriate to detail the controlling facts.

Koehler was indicted on separate counts of assault with a dangerous weapon and assault with intent to commit rape. After five days of trial, the case was submitted to the jury for deliberation on Friday, June 16, 1972, at 11:45 a. m. Koehler and his counsel provided the bailiff with telephone numbers where they could be reached whenever the jurors returned. Since Koehler did not have a specific number where he could be reached after 4:30 p. m., he arranged to call his attorney at various times during the evening to inform him where he might be reached.

After breaking for lunch from 12 noon to 1:15 p. m., the jury deliberated until 4:30 p. m. At this time, in the presence of petitioner and both counsel, the court informed the jury they had two options if a verdict were not reached by 11 p. m.: they could continue deliberations that night and submit a sealed verdict, or they could terminate deliberations for the night and begin again in the morning after sleeping at court-provided accommodations.

After breaking for dinner from 6:15 p. m. to 7:30 p. m., the jury deliberated until 9 p. m. At this time, the jury foreman gave the following note to the bailiff:

We feel we are deadlocked at this time with no hope of reaching a unanimous decision in the future. We await further instructions.

The bailiff testified that from 9 p. m. to 10:30 p. m. he dialed the telephone numbers appearing on the bailiff's report which were listed for Koehler and his counsel, but could locate neither. The court then decided to communicate with the jury in the absence of both Koehler and his counsel. The following dialogue ensued:

THE COURT: I received your message. For the record the defendant is not here and we can't locate him or his attorney, but your message indicates, and I'm reading it for the record, we feel we are deadlocked at this time with no hope of reaching an unanimous verdict—decision in the future, signed by yourself; you await further instructions. Is this correct?

MR. SCATES: [Foreman]: Yes, sir.

THE COURT: And you feel that there's no hope in your continuing to deliberate?

MR. SCATES: Your Honor, we've taken several both hand votes and secret ballots and it has come out virtually the same from the time that we started.

THE COURT: I don't want to know how you're doing as far as the vote is concerned, but as I stated in my instructions I don't want to have you compromise your convictions. If you can't amongst yourselves decide, and this happens occasionally, I can't discharge you because the defendant and the attorney are not here, but I'll have you go home and come back Monday and for all intent and purposes you are hung and that's about it.

MR. SCATES: Yes, sir.

THE COURT: And I guess I'll have to accept that. Mr. Vochoska, you see nothing else, do you? We've tried and the bailiff has tried and we can't get the defendant and the attorney and no use having to wait any longer so we'll go ahead, you're excused, as far as I'm concerned at this time the verdict—your verdict is a hung verdict; there's no decision and we'll have to announce it in open court with the defendant here Monday morning. So will you appear Monday morning at 9:30 please? I realize that it's an inconvenience, but I would appreciate it and I do want to tell you that I think you've had a very difficult case to try. It was difficult for me and it was difficult for you and for many reasons which I prefer not to go into, but I'm sure that you felt the same thing and I want to thank you for your indulgence in it. Very well, we'll excuse you then and see you Monday morning at 9:30 and thank you again.

On Monday, June 19, in the presence of Koehler and counsel for both parties, the court verified, with the foreman, the events of the evening of June 16, accepted the hung jury disposition and formally discharged the jury. Koehler's counsel then offered to establish by the testimony of witnesses that on Friday night he had been at the number given to the bailiff, but the court rejected this offer as unnecessary.

After the case was set for retrial, Koehler moved to dismiss the indictment on the ground that re-prosecution would unconstitutionally place him twice in jeopardy for the same offense because no "manifest necessity" justified the June 16 discharge of the jury.[1] At the hearing on the motion, the uncontradicted testimony of Koehler's counsel established that although he was available at the designated telephone number, the bailiff was unable to reach him because the bailiff's report incorrectly listed the number. Whether the error was counsel's or the bailiff's, it was uncontroverted that the bailiff's report listed the number as 333–9065 while the correct number was 333–9056. Counsel also corroborated

---

1. Alaska Const. art. I, § 9 provides:

No person shall be put in jeopardy twice for the same offense. No person shall be compelled in any criminal proceeding to be a witness against himself.

U.S.Const., amend. V, provides in part:

[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.

Koehler's testimony that Koehler had contacted him "2 or 3" times during the evening to inquire about the jury's deliberations. At the close of the hearing, Judge Singleton, who had not presided at trial, denied the motion to dismiss, reasoning that the discharge had been within the trial judge's discretion under Criminal Rule 27.[2] His motion having been denied, Koehler brought this petition.[3]

Since petitioner argues that the jury was effectively discharged in his absence on June 16, we must at the outset analyze the trial court's actions that evening. At the time of trial, Criminal Rule 27(e) provided that after the jury begins its deliberations

[t]hey shall be and remain under the charge of an officer until they agree upon their verdict or are discharged by the court. Unless otherwise ordered by the court, the officer having them under his charge must keep the jury together, separate from other persons. . . .[4]

If the court permits the jurors to be separated from one another, Criminal Rule 27(c) requires the court to admonish the jurors

not to converse with anyone on any subject connected with the trial, and that he is to discuss the case only with other jurors in the jury room.

Other than by consent of all parties, Criminal Rule 27(g) permits a discharge of the jury only (1) after they have agreed upon a verdict and given it in open court or (2) after the court determines "that there is no probability of an agreement being arrived at among the jurors necessary to return a verdict."

Our study of the record has led us to the conclusion that on the evening of June 16 the superior court accepted the jury's inability to agree upon a verdict and discharged them from further deliberative duties as to either count of the indictment.[5]

---

2. Crim.R. 27 at the time of trial provided in part:

  (g) *Discharge of Jury Before Verdict.* Except as may be provided in these rules or as the interest of justice may require, the jury shall not be discharged after the cause is submitted to them until they have agreed upon a verdict and given it in open court, except:

  (1) By the consent of all parties entered in the record.

  (2) At the expiration of such period as the court deems proper if it appears that there is no probability of an agreement being arrived at among the jurors necessary to return a verdict.

  (h) *Discharge Without Verdict—Retrial.* In all cases where the jury is discharged without having given a verdict, or is prevented from giving a verdict by reason of accident or other cause during the progress of the trial, or after the cause is submitted to them, the action may be again tried immediately, or at a future time, as the court directs.

3. We have determined that petitioner's application meets the requirements of Appellate Rules 23 and 24, and therefore have granted review. *See* Muller v. State, 478 P.2d 822, 824 (Alaska 1971).

4. The majority of federal courts permit juries to separate even after they begin delibera-

tions; a minority of federal courts and several state courts hold such action to be reversible error. *See, e. g.,* United States v. Breland, 376 F.2d 721 (2d Cir. 1967) ; Hines v. United States, 365 F.2d 649 (10th Cir. 1966) ; United States v. D'Antonio, 342 F.2d 667 (7th Cir. 1965) ; Commonwealth v. Della Porta, 324 Mass. 193, 85 N.E.2d 248 (1949) ; Commonwealth v. Gockley, 411 Pa. 437, 192 A.2d 693 (1963).

5. We think the following portions of the record are determinative:

  . . . I'll have you go home and come back Monday and for all intent and purposes you are hung and that's about it. And I guess I'll have to accept that. . . . [Y]ou're excused, as far as I'm concerned at this time . . . your verdict is a hung verdict; there's no decision and we'll have to announce it in open court with the defendant here Monday morning.

  Also reflective of a discharge is the trial court's failure to admonish the jury upon their June 16 dispersal, as required by Crim. R. 27(c) in cases of jury separation. We further note that the court's comments on its inability to locate the petitioner and his counsel would probably have precluded the jury's further consideration of the case, since that remark might have been understood as a reflection on petitioner's consciousness of guilt. *See* Wade v. United States, 142 U.S.App.D.C. 356, 441 F.2d 1046, 1050 (1971).

We next turn to the questions of whether Koehler had a right to be present during the in-court proceedings which were held on the evening of June 16, and if he did, what is the effect of the trial court's proceeding in his absence. Both the Sixth Amendment to the Federal Constitution and Article I, Section 11, of Alaska's Constitution provide that the accused shall have the right "to be confronted with the witnesses against him." In the implementation of this right, Criminal Rule 38 at the time of trial provided in part:

> The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules . . . . In prosecutions for any offense, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.[6]

We think it clear, and so hold, that under Criminal Rule 38 Koehler's presence was required at the June 16 proceedings when the trial court discharged the jury because of their inability to agree on a verdict. The events of that evening constituted a "stage of the trial" within the meaning of the rule, and the record therefore indicates that Koehler was deprived of his right to be present.

Our conclusion that Koehler had a right to be present at the June 16 proceedigs requires us to further determine whether denial of this right constituted prejudicial error.[7] Koehler emphasizes a line of cases holding that the personal presence of the accused and his counsel is a necessary pre-requisite to a valid discharge of the jury because of their inability to agree on a verdict.[8] This is the majority rule,[9] although there is contrary authority.[10] The majority of courts recognized that the trial judge, alone, has discretion to discharge the jury when he thinks there is "no probability of an agreement being arrived at among the jurors necessary to return a verdict." Criminal Rule 27(g)(2). On the other hand, the courts concede that the constitutional and statutory rights of the accused to be present and represented by counsel at every stage of the trial—including the return of the verdict—are fundamental. And while the judge has discretion to discharge the jury for their inability to agree, the majority of courts reason that the accused and his counsel, by being present and participating in the discharge decision, may have a significant impact on the court's exercise of its discretion. In Clemensen v. Municipal Court,[11] a California appellate court noted that

> [h]ad counsel been present as he had requested, he could have suggested the court make additional inquiries of the

6. We have concluded that there is no basis for holding that petitioner's absence from the June 16 proceedings was "voluntary" so as to constitute a waiver of his right to be present under Crim.R. 38. The record demonstrates that petitioner did not have knowledge that the June 16 evening proceedings were taking place. Thus, the record fails to disclose any intent on petitioner's part to frustate the June 16 proceeding or to abscond.

For a thorough discussion of the meaning of "voluntary absence," as that term is employed in Crim.R. 38, see our opinion in Lee v. State, 509 P.2d 1088, 1090 (Alaska 1973).

7. In Noffke v. State, 422 P.2d 102, 105 (Alaska 1967), we said:
We hold that nonadherence by the trial court to the provisions of Crim.R. 38 does not automatically constitute reversible error. A violation of the mandate of Crim.R. 38 is not prejudicial error unless such nonadherence

has affected a substantial right of the defendant.
See Lee v. State, 509 P.2d 1088, 1093–1094 (Alaska 1973); Speidel v. State, 460 P.2d 77, 84 (Alaska 1969); Kugzruk v. State, 436 P.2d 962, 964 (Alaska 1968); Brown v. State, 372 P.2d 785, 789–790 (Alaska 1962).

8. See, e. g., Clemensen v. Municipal Court, 18 Cal.App.3d 492, 96 Cal.Rptr. 126 (1971); State v. Chandler, 128 Or. 204, 274 P. 303 (1929); State v. Ulmo, 19 Wash.2d 663, 143 P.2d 862 (1943).

9. See generally Annot., 150 A.L.R. 764 (1943); 1 Wharton, Criminal Law and Procedure § 141, at 329 (12th ed. 1957).

10. See, e. g., State v. McCrary, 365 Mo. 799, 287 S.W.2d 785 (1956); State v. Farne, 190 S.C. 75, 1 S.E.2d 912 (1939).

11. 18 Cal.App.3d 492, 96 Cal.Rptr. 126, 129 (1971).

jury. A specific poll of the jury could have been requested. Counsel could have discussed with the court the possibility of further deliberation. . . . Since petitioner was represented by private counsel, the additional legal expense incident to a retrial of an action that had already taken four days could have been brought to the attention of the court and such consideration might have induced the trial judge to permit further deliberation by the jury. (footnote omitted)

Inherent in the majority rule is the recognition that if the double jeopardy barrier does not exist to remedy a discharge of the jury in the defendant's involuntary absence, then no remedy exists to inhibit such judicial action in the future and thus to protect his "valued right to have his trial completed by a particular tribunal." [12]

The majority rule requires that a court decide whether the involuntary absence of the defendant at the discharge stage of trial constitutes reversible or prejudicial error.[13] We find that the discharge in the

case at bar affected petitioner's "substantial right" to have his trial completed by the particular tribunal impaneled against him. Moreover, his absence occurred when the judge and jury were engaged in open court in proceedings directly bearing upon the decisional processes of the jury.[14]

▇▇▇ In Speidel v. State,[15] in holding a defendant's absence from a presentence conference to be reversible error, we said:

The denial of that right must be assumed to have been prejudicial, since we cannot say with any degree of certainty that the judge may not have been influenced to impose a lesser sentence had appellant been given the opportunity to be heard and participate in the discussion relating to sentencing.[16] (footnote omitted)

This statement is analogous to the rationale used to support the majority rule we have been discussing. In addition to the contribution his counsel could have made to the jury discharge decision as noted in the *Clemensen* case, Koehler argues that he would have requested that the ABA instruction regarding hung juries be given.[17]

---

12. United States v. Jorn, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (1971), *quoting* from Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949); State v. Ulmo, 19 Wash.2d 663, 143 P.2d 862 (1943); Clemensen v. Municipal Court, 18 Cal.App.3d 492, 96 Cal.Rptr. 126 (1971).

13. We have previously discussed the requirement found in Crim.R. 38 that the defendant has the right to be present at every stage of the trial. Additionally, in the case at bar, we have held that the June 16 discharge proceedings constituted a stage of petitioner's trial within the intendment of Crim.R. 38.

14. Federal courts raise a rebuttable presumption of prejudice from the defendant's absence during court communications with potentially hung juries. *E. g.*, Wade v. United States, 142 U.S.App.D.C. 356, 441 F.2d 1046 (1971).

15. 460 P.2d 77 (Alaska 1969).

16. *Id.* at 84.

17. In Fields v. State, 487 P.2d 831, 842–843 (Alaska 1971), we suggested

that when a trial judge is faced with an apparently deadlocked jury the recommended instruction be considered. This approach will yield uniformity and predictability, and should eliminate appeals based upon technical variations in language. For convenience and guidance, the recommended instruction is quoted:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

We agree that had Koehler and his counsel been present at the time in question, the court could have been requested to make additional inquiries of the jury, to take a poll of the jurors as to the separate counts of the indictment, or to permit further deliberations under additional instructions.[18] In our view, the trial court's decision to act in the absence of both the accused and his counsel deprived Koehler of the important right to have his trial completed by that particular jury. In light of all these circumstances, we hold that Koehler's substantial rights were affected, and that the error cannot be regarded as harmless.[19]

We are of the further view that the principle of double jeopardy bars retrial of petitioner on both counts of the indictment in the case at bar. Under the Alaska and United States Constitutions, jeopardy attaches when a defendant is placed on trial before a court of competent jurisdiction and a jury sworn.[20] If the court discharges the jury without a verdict being reached, the defendant cannot be retried unless he consented to the discharge or "manifest necessity" required it.

Jeopardy clearly attached in the instant case since at the time the mistrial was declared, the jury had been sworn and the trial had commenced. Moreover, the state does not argue that Koehler consented to the jury's discharge. Thus, we must decide whether a "manifest necessity" existed sufficient to discharge the jury and to declare a mistrial under the particular circumstances of this case. It is well established that a "manifest necessity" must exist for all mistrials, including hung juries,[21] before reprosecution is permissible under the Double Jeopardy Clause.[22] In cases of potentially hung juries, the "manifest necessity" test under Criminal Rule 27(g)(2) ordinarily becomes whether there is "no probability" that a unanimous verdict will be reached. This discretionary standard is generally recognized by most courts.[23]

As noted, one of the rules of criminal procedure violated in this case was the

---

You are not partisans. You are judges —judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case. (footnote omitted)

18. We cannot accord controlling weight to the fact that the trial judge testified, at the hearing held on petitioner's motion to dismiss the indictment, that he would have discharged the jury on June 16 regardless of any suggestions Koehler might have made.

19. Davis v. State, 499 P.2d 1025 (Alaska 1972); Crim.R. 47(a).

Our dissenting colleague believes that Koehler was required to object to the Friday evening discharge of the jury when he was present in court the following Monday morning. The dissent concludes that this failure to object was a tactical decision which resulted in the waiver by Koehler of any possible constitutional objections to the discharge of the jury. In our view, such a conclusion disregards the circumstance that once the Friday evening discharge occurred Koehler and his counsel were powerless to rectify the procedural errors surrounding the discharge. When the jury reconvened on Monday, it was then too late for either Koehler or his counsel to cure any procedural infirmities by objection or by stipulation to continue the trial. As we have

pointed out, in the absence of both Koehler and his counsel, the jury was permitted to separate without the required cautionary instruction from the court. The jurors were released from sequestration and allowed to return to their homes for the weekend after being informed they were discharged and that neither the defendant nor his counsel could be located.

20. *See* Muller v. State, 478 P.2d 822, 825 (Alaska 1971); Lewis v. State, 452 P.2d 892, 893–894 (Alaska 1969); Selman v. State, 406 P.2d 181, 186 (Alaska 1965).

21. Lewis v. State, 452 P.2d 892, 894 (Alaska 1969); *citing* Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824).

22. This view is reflected in the United States Supreme Court's most recent double jeopardy decision. Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973).

23. *E. g.*, Grogan v. United States, 394 F.2d 287, 289 (5th Cir. 1967), cert. denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968); People v. Mays, 23 Ill.2d 520, 179 N.E.2d 654 (1962).

trial court's discharging of the jury in the involuntary absence of Koehler and his counsel. Courts have recognized such absence as a factor in holding that the mistrial was not pursuant to a "manifest necessity." [24]

■ The ABA Project on Standards Relating To Trial By Jury recognizes that discharge of the jury is not permitted merely because jurors report they have not been able to agree. The ABA suggests that whether there exists a probability of agreement should be determined by (1) questioning the jurors as to their inability to agree without any attempt on the trial judge's part to ascertain how the jurors stand on the question of innocence or guilt and (2) considering the length of the deliberations, the length of the trial, and the nature or complexity of the case.[25] The approach of the ABA has some support in the courts.[26] In exercising its discretion, the trial court need not make express findings pertaining to its decision to discharge the jury. However, the record must clearly support the trial court's implicit finding of "no prospect of agreement."

In the case at bar, the trial court failed to make any express inquiry of the individual juror's ability to reach a verdict. Instead, while speaking to the foreman, the court merely noticed "4 or 5" other jurors shook their heads that they could not agree on a verdict. Nor did the trial court make any inquiry as to whether there existed a possibility of reaching a verdict on at least one of the two counts.

Moreover, while the foreman stated that the jury had taken several fruitless votes, this was the first time the jury had reported to the court their inability to reach a decision. Courts have held mistrials declared in such circumstances impermissible.[27] While the court may have given a hung jury charge in its initial instruction, the case at bar presented an appropriate situation for employing the ABA auxiliary instruction recommended in Fields v. State.[28]

Finally, we might note that the jury had only been deliberating 6½ hours on a trial which involved two counts, lasted 5 days, and involved numerous witnesses, many of whom contradicted each other. While this deliberation period, alone, might not foreclose a mistrial, the ABA study reflects that juries often take more than 6½ hours to reach a verdict on a 5-day trial.[29]

■ In light of the particular circumstances of this record, we conclude that no "manifest necessity" existed for the discharge of the jury. We therefore conclude that the constitutional protection against double jeopardy precludes the retrial of petitioner in the case at bar. The trial court erred in denying the motion to dismiss the indictment.

Reversed.

FITZGERALD, J., not participating.

ERWIN, J., dissenting.

ERWIN, Justice (dissenting).

I dissent from the view expressed by the majority, for I would find on the facts of this case that the failure to object to the discharge of the jury at the time of trial was a tactical decision which is binding on the defendant and precludes consideration of his claim on appeal. Such a conclusion

24. Clemensen v. Municipal Court, 18 Cal.App. 3d 492, 502, 96 Cal.Rptr. 126, 132 (1971); State v. Chandler, 128 Or. 204, 274 P. 303, 305 (1929).

25. ABA Project on Standards Relating To Trial By Jury, 156 (1968) (hereafter ABA Study).

26. Paulson v. Superior Court, 58 Cal.2d 1, 22 Cal.Rptr. 649, 372 P.2d 641 (1962) (questioning of jurors); People v. Mays, 23 Ill.2d 520, 179 N.E.2d 654 (1962) (nature or complexity of the case); Commonwealth v. Baker, 413 Pa. 105, 196 A.2d 382 (1964) (length of deliberations).

27. E. g., Commonwealth v. Baker, 413 Pa. 105, 196 A.2d 382 (1964).

28. 487 P.2d 831, 842–843 (Alaska 1971); see note 25 supra.

29. ABA Study, supra note 25, at 156–57; H. Kalven & H. Zeisel, The American Jury 454–63 (1966).

requires both an understanding of the doctrine of double jeopardy and the discretion of a trial court in terminating a trial prior to a verdict.

In deciding to abort a criminal trial short of a verdict and without a defendant's consent, after jeopardy has attached, the trial judge is typically afforded broad discretion,[1] since he is "best situated intelligently to make such a decision."[2] The necessity for such discretion is founded on the recognition that when jurors fail to agree the trial judge is placed on the horns of a dilemma. If the court discharges the jury before it reaches a verdict, the defendant will likely plead "double jeopardy" unless he has expressly consented to the discharge. On the other hand, if the court urges the jury to resume deliberations, and it thereafter brings in a verdict of guilty, the defendant will frequently contend that the jury was coerced.[3] But, as a counter to the trial court's discretion, it is recognized that the double jeopardy clause safeguards the defendant's "valued right to have his trial completed by a particular tribunal,"[4] which "he might believe to be favorably disposed to his fate."[5]

Therefore, with due regard for the rights of the defendant and the problems of the hung jury, trial court discretion has been narrowed and a second prosecution occasionally barred where a trial judge,

sua sponte, has mistakenly declared a mistrial.[6] In defining standards for the exercise of this discretion, the United States Supreme Court has continually adhered to the formulation of Justice Story in United States v. Perez, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824):

> [T]he law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity for the act, or the ends of public justice would otherwise be defeated.[7]

Beyond these general guidelines, the Court has emphasized that each case must turn upon its own facts.[8]

This court too has recognized the "well-established rule that the fact that an accused has been placed on trial before a competent tribunal does not, standing alone, invariably bar his reprosecution if the trial court did not result in a verdict."[9] Thus, in Muller v. State,[10] we noted that

> a trial court may declare a mistrial without barring retrial when it concludes that there is a manifest necessity to do so.

> .    .    .    .    .    .

> In such instances, the permissibility of a retrial will depend upon the circum-

1. *E. g.*, Illinois v. Somerville, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425, 429 (1973).

2. Gori v. United States, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1960).

3. Commonwealth v. Baker, 413 Pa. 105, 196 A.2d 382, 386–387 (1964).

4. Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949).

5. United States v. Jorn, 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543, 557 (1971).

6. *See* United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); Lewis v. State, 452 P.2d 892 (Alaska 1969).

It should be noted that the most recent federal decision in this area found only two other appellate cases in the United States (one is cited by the majority at footnote 27) where the court found an abuse of discretion in declaring a hung jury. United States v. Goldstein, 479 F.2d 1061, 1069 (2d Cir. 1973).

7. Quoted with approval in Muller v. State, 478 P.2d 822, 826 (Alaska 1971); Lewis v. State, 452 P.2d 892, 895 (Alaska 1969).

8. United States v. Goldstein, 479 F.2d 1061, 1068 (2d Cir. 1973).

9. Lewis v. State, 452 P.2d 892, 894 (Alaska 1969); Selman v. State, 406 P.2d 181, 186 n. 18 (Alaska 1965). *See* Wade v. Hunter, 336 U.S. 684, 688–689, 69 S.Ct. 834, 836–837, 93 L.Ed. 974, 978 (1949).

10. 478 P.2d 822, 826 (Alaska 1971).

stances that made it manifestly necessary to dismiss the jury.

Therefore it is necessary to examine the factual background of this appeal to ascertain whether manifest necessity existed.

There is no dispute that the jury foreman gave the following note to the bailiff:

> We feel we are deadlocked at this time with no hope of reaching an unanimous decision in the future. We await further instructions.

There is no dispute that the case was submitted to the jury at 11:45 a. m. and that the note was handed to the bailiff at approximately 9:00 p. m. There is also no dispute that after numerous fruitless attempts by the judge and two bailiffs over a one and one-half hour period to find either the defendant or his counsel the court in the presence of the district attorney closely questioned the foreman on the deadlock.[11] He confirmed the impasse. On Monday morning, after defendant and his counsel had been located, the inquiry into the jury stalemate was repeated. At that time, the defendant did not contest the conclusion that the jury was incapable of agreeing on a verdict nor did he challenge the discharge of the jury. In fact, there was no objection at all to the discharge by either defense counsel or the defendant until some six months later when a motion to dismiss the indictment was filed on the grounds that the declaration of mistrial had been improper and that jeopardy had attached.

The appellant now urges there was obvious prejudice even though he did not object to the jury discharge. In support of a claim of plain error, he argues that he could have asked for additional instructions or assisted the court in bringing the case to a verdict. However, it is equally logical that the failure to raise any objection was tactical. A hung jury is obviously preferable to a guilty verdict. It is also clear that a criminal defendant is not going to urge further deliberation of a jury leaning toward conviction. Since appellant did not pursue the matter, the record does not reveal the nature of the split,[12] and, thus, this court can only speculate whether the discharge was favorable or unfavorable to him.

The majority takes the position that the jury could never have been convened again, but a simple stipulation by both parties for the jury to continue could have permitted additional deliberation. An objection would have had the effect of focusing on the problem at a time when there was still a possibility it could have been corrected and, further, would have provided a record necessary to support a claim of error. Because there is a logical reason why the discharge of the jury could have been beneficial to the defendant, he must bear the burden of objecting at trial or be deemed to have waived the error.[13]

The merit of appellant's claim that prejudice followed from discharge of this hung jury is more understandable in context. The facts are classifically simple. This is a prosecution for the attempted rape of a woman hitchhiker by a defendant who acknowledged picking up the complaining witness but who denied using any force. There were no witnesses to the event; to convict, the jury had to believe the woman; to acquit, it had to believe the defend-

---

11. The court was able to contact counsel's wife and two other members of the Public Defender's office, as well as a friend of the defendant, but it could find no one who could locate the defendant or his counsel.

12. Disclosure of the nature of the jury split may in itself be grounds for reversal where conviction follows. *See* United States v. Rogers, 289 F.2d 433, 435 (4th Cir. 1961). But, there is no such impediment to disclosure where inquiry is made by the court after discharge of the jury.

13. *See, e. g.*, Lanier v. State, 486 P.2d 981, 986–987 (Alaska 1971); Johnson v. State, 486 P.2d 379, 381 (Alaska 1971).

**452**

ant. The eight hours of deliberation,[14] then, were over a straightforward issue of credibility; some jurors believed the complaining witness and some believed the defendant. To find that the trial judge committed plain error in this situation by discharging the jury overlooks the fact that he, too, sat through the entire trial and must have reached his own conclusion whether there was enough substance to the conflict in testimony that more deliberation would have brought in a verdict. In footnote 18 the majority indicates that it gives no weight to the trial judge's statement that he would have discharged the jury regardless of any suggestions Koehler or his attorney might have made. Because there was only the single issue of credibility, I do not agree. In my view, the trial judge was the only person qualified to judge that friendly persuasion of non-agreeing jurors had ended and that coercion by the court would be the next step required to reach a verdict.

In Fields v. State, 487 P.2d 831, 837 (Alaska 1971), we recognized that "a hung jury is a legitimate end of a criminal trial, and is the occasionally inevitable result of requiring an unanimous verdict beyond a reasonable doubt." We also noted that the law generally attempts to protect juries from potentially coercive influences. Obviously the dividing line is a difficult one to follow, but it is clear to me that the trial judge was sufficiently conscientious to enable us to say categorically that there was no plain error.

I would affirm the decision of the trial court.

14. The majority states there were six and one-half hours of deliberation, but the bailiff's notes show the following:

|  |  | Deliberation |
|---|---|---|
| case went to jury | 11:45 a. m. |  |
| jury to lunch | 12:00 noon |  |
| jury back from lunch | 1:00 p. m. |  |
| jury to dinner | 6:15 p. m. | 5¼ hours |
| jury back | 7:30 p. m. |  |
| jury sent note | 9:00 p. m. | 1½ hours |
| jury discharged | 10:30 p. m. | 1½ hours |
| Total Time Deliberating | | 8¼ hours |

The jury received instructions from the court at 4:30 so possibly 15 minutes were spent on that. It is logical to assume that the jury continued deliberating during the attempt to find the defendant and his attorney, for they did not know of the difficulty in finding them and remained under a continuing obligation to reach a verdict. While some argument has been advanced by the defendant that they probably sat and waited, such a conclusion is contrary to the standard jury instruction which presumes an official duty to have been performed unless there is evidence to the contrary.