Douglas W. ARTEMIE, Petitioner,

v.

STATE of Alaska, Respondent.

No. A–9286.

Court of Appeals of Alaska.

May 25, 2007.

Allan Beiswenger, Anchorage, for the Petitioner.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## *OPINION*

COATS, Chief Judge.

Douglas W. Artemie was tried on two counts of first-degree sexual assault and one count of first-degree assault. The jury could

---

not agree on a verdict. On its first day of deliberations, the jury sent two notes to Superior Court Judge Larry D. Card telling him that it was deadlocked. Judge Card responded to both notes by telling the jury to continue deliberations.

On the second day of deliberations, the jurors listened to a recording of trial testimony and then sent a note to Judge Card saying that they were still deadlocked and did not believe they would be able to reach a unanimous verdict. Artemie asked Judge Card to instruct the jurors to continue their deliberations. Judge Card denied the request. Instead, he brought the jurors to the courtroom and asked them if they understood the instructions and if additional instructions would assist them. All of the jurors indicated that additional instructions would not assist them, and Judge Card declared a mistrial.

Two weeks later, Artemie moved for dismissal of the case with prejudice, arguing that a retrial was barred by the double jeopardy clause. Judge Card denied the motion, and Artemie has petitioned us to review that decision. The question is whether, under the circumstances of Artemie's case, Judge Card could reasonably conclude that there was manifest necessity for a mistrial because there was no probability the jury would reach a unanimous verdict. We hold that Judge Card could reasonably reach this conclusion and, therefore, the double jeopardy clause does not bar Artemie's retrial.

*Facts and proceedings*

Artemie was charged with two counts of first-degree sexual assault and one count of first-degree assault.[1] At his trial, the jury heard approximately seventeen hours of testimony and three hours of argument over the course of six days.

The case essentially involved a dispute over the identity of the assailant and the credibility of the witnesses. N.J. testified that Artemie sexually assaulted her. In his defense, Artemie admitted that he and N.J. had kissed earlier in the night, but he claimed he left the apartment when he heard an angry voicemail message left on N.J.'s telephone answering machine and thought a man with whom he did not get along was on his way to the apartment. Artemie argued that the jury should not believe N.J.'s testimony because she was drunk—it was undisputed that she had a blood alcohol level of 0.311 percent an hour after the assault and did not remember portions of the evening. And Artemie contended that the assailant could have been N.J.'s ex-boyfriend or the man Artemie thought was on his way to the apartment.

At the end of the trial, Judge Card instructed the jury. Instruction Number 38 stated that the jury's verdict must be unanimous. It further provided that the jurors should not hesitate to reexamine their own views or change their opinions but that they should not surrender their honest beliefs solely because of the opinion of other jurors or to return a verdict.[2] After instructing the jurors, Judge Card excused the jury for the night.

The jury began deliberations at approximately 9:00 a.m. on Friday, April 15. Just after noon, the jury foreperson wrote, "We are unable to reach a unanimous decision. What should we do?" A half-hour later, Judge Card responded, "Please continue to deliberate. If there are any additional instructions on the law that you desire, or you

1. AS 11.41.410(a)(1) and AS 11.41.200(a)(1), respectively.

2. The entire instruction read as follows:
A verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest belief as to the weight of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not parsons, you are judges, judges of the facts. Your sole interest is to ascertain a truth from the evidence in the case.

desire the playback of any testimony heard during the trial, please send me a note requesting your desires." After an additional 30 minutes of deliberations, a second juror wrote:

> Sir, we started the day at 9 (not guilty) and 3 (guilty). We have been deadlocked at 10 (not guilty) and 2 (guilty) since around 10:00 a.m. We are all very adamant on our current vote and do not feel any review of the evidence/testimony will change any of our minds. Your guidance is appreciated.

Judge Card responded an hour later: "I have discussed the issue with counsel, and in light of the fact that we all had a very long day yesterday, I feel it best to recess deliberations for the weekend, and you are to return on Monday morning to resume your deliberations."

On Monday, the jurors came in at 9:00 a.m. and listened to a recording of approximately six hours of testimony by N.J. and Artemie. They did not take a lunch break. At 3:35 p.m., the jury foreperson wrote, "We are still unable to reach a[ ] unanimous decision. We do not believe we will be able to reach a unanimous decision."

At that point, the State argued that Judge Card should declare a mistrial because it did not appear the jury would be able to reach a unanimous decision. Artemie objected. He argued that the jury had only been deliberating for three to four hours and Judge Card should re-read Instruction Number 38 and tell the jury to continue deliberating. Judge Card denied the request.

At approximately 4:30 p.m., Judge Card asked the jury to return to the courtroom. He told the jury foreperson that he had received her note that the jury was still unable to reach a unanimous decision. He then asked the jurors whether they understood the instructions and whether additional instructions would assist them. The jurors indicated that they understood the instructions and that additional instructions would

not assist them. Judge Card therefore found manifest necessity for a mistrial. After Judge Card granted a mistrial, the jury foreperson stated that the jury had "a couple people go back and forth" but the final tally was eight (not guilty) to four (guilty).

Approximately two weeks later, Artemie moved to dismiss the case with prejudice—that is, without an opportunity for the State to retry him. He noted that the mistrial was declared over his objection, and he argued that a retrial would violate his right against double jeopardy. Judge Card denied the motion. Artemie petitioned this court for review.

### Discussion

*Did Judge Card abuse his discretion in denying the motion to dismiss?*

■ A trial judge may discharge a jury before it reaches a verdict whenever there is "manifest necessity" to do so.[3] Manifest necessity exists when "there is 'no probability' that a unanimous verdict will be reached."[4]

■ In *Koehler v. State,*[5] the Alaska Supreme Court applied the standards of the American Bar Association (ABA) Project on Standards Relating to Trial by Jury to determine whether there was a probability the jurors would reach a unanimous verdict:

> [W]hether there exists a probability of agreement should be determined by (1) questioning the jurors as to their inability to agree without any attempt on the trial judge's part to ascertain how the jurors stand on the question of innocence or guilt and (2) considering the length of the deliberations, the length of the trial, and the nature or complexity of the case.... In exercising its discretion the trial court need not make express findings pertaining to its decision to discharge the jury. However, the record must clearly support the

---

3. *Lewis v. State,* 452 P.2d 892, 895–96 (Alaska 1969).

4. *Koehler v. State,* 519 P.2d 442, 448 (Alaska 1974).

5. 519 P.2d 442.

trial court's implicit finding of "no prospect of agreement." [6]

Here, Judge Card told the jurors that he had received their note declaring that they were deadlocked. He asked the jurors to confirm that they understood the instructions and to tell him if they thought additional instructions would assist them. Although he did not directly ask the jurors if they were unable to agree on a verdict, Judge Card had just received his third note from the jury stating that the jury was deadlocked. Artemie did not ask Judge Card to individually poll the jury, and on appeal he has not challenged Judge Card's questioning of the jurors.

■ In deciding whether to grant a mistrial, a trial judge must consider "the length of the deliberations, the length of the trial, and the nature or complexity of the case." [7] As the Ninth Circuit has noted:

> There is no minimum amount of time which a jury must spend in deliberations before a mistrial can be declared. This factor is one which is best left to the determination of the trial judge who was most aware of the circumstances of the trial.[8]

In this case, the jury listened to approximately seventeen hours of testimony and three hours of argument over the course of six days. The jury then spent approximately six hours listening to playbacks of testimony and at least three and up to six and one-half hours deliberating.[9]

In *Koehler*, the court noted that, according to an ABA study, juries often take longer than this to reach a verdict in a trial of this duration.[10] However, Artemie's case primarily hinged on the credibility of witnesses—particularly the credibility of Artemie and the alleged victim, N.J. If some jurors were firm in their belief of N.J.'s version of events and other jurors were firm in their belief of Artemie's version, even after listening to a playback of their testimony, there was little to debate. Moreover, Judge Card did not declare a mistrial until the jury reported its inability to reach a verdict for the third time.

We agree with the Second Circuit that "[r]equiring a jury to continue deliberations despite genuine and irreconcilable disagreement more often than not defeats the ends of public justice; not only will such compulsion needlessly waste valuable judicial resources, it may coerce erroneous verdicts." [11] Judge Card did not abuse his discretion in finding there was no probability of the jury reaching a verdict and, therefore, in declaring a mistrial.

Mistrial occasioned by the jury's inability to reach a verdict is a "classic example" of a case in which retrial is permitted even though the first jury was discharged without the defendant's consent.[12] Accordingly, Artemie's retrial will not violate his right against twice being placed in jeopardy, and Judge Card did not err in denying Artemie's motion to dismiss.

### Conclusion

Judge Card did not abuse his discretion in finding manifest necessity for a mistrial. The decision of the trial court is AFFIRMED.

---

**6.** *Id.* at 449.

**7.** *Id.*

**8.** *Arnold v. McCarthy*, 566 F.2d 1377, 1387 (9th Cir.1978).

**9.** On Friday, the jury deliberated for about three to five hours—depending on whether it continued deliberations while waiting for responses to its questions. On Monday, the jury listened to about six hours of testimony and then deliberated for somewhere between five minutes and one and a half hours—depending on the length of the playbacks and whether the jury continued deliberating while waiting for a response to its note that it was deadlocked.

**10.** *Koehler*, 519 P.2d at 449 (citing ABA Project on Standards Relating to Trial by Jury (1968) at 156–57 and H. Kalven & H. Zeisel, The American Jury at 454–63 (1966)).

**11.** *United States v. Goldstein*, 479 F.2d 1061, 1068 (2d Cir.1973). *See also United States v. See*, 505 F.2d 845, 851 (9th Cir.1974).

**12.** *Lewis*, 452 P.2d at 894.