**Paul STAAEL, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–78.

Court of Appeals of Alaska.

April 12, 1985.

Charles R. Pengilly, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Anne D. Carpeneti, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Paul Staael was charged with attempted first-degree murder. AS 11.41.100; AS 11.-31.100. He was tried twice. A mistrial was declared at the first trial when the jury was unable to agree. Staael was convicted at his second trial. After conviction he moved to dismiss the attempted first-degree murder charge contending that his retrial was barred by double jeopardy. Staael appeals the trial court's denial of this motion and, in addition, argues that the trial court erred during his first trial in instructing the jury that it had to unanimously acquit on the target offense before considering lesser-included offenses. He also challenges the trial court's exclusion of lay testimony on the phenomenon of alcohol blackouts at his second trial and, finally, contends that the trial judge improperly rejected a statutory mitigating factor and imposed an excessive sentence. We affirm.

## FACTS

Paul Staael was charged with shooting a handgun at a bartender at the Circle Hot Springs Saloon near Fairbanks. The bartender had asked Staael to leave the bar because of his behavior. Staael returned a short time later with a .357 magnum pistol. He fired a shot that barely missed the bartender who dived to the floor just in time. Another patron in the bar disarmed Staael. Staael was restrained until the troopers from Fairbanks arrived and arrested him.

The bartender testified that Staael had verbally threatened him and then deliberately pulled the trigger. Staael testified that the shooting occurred while he was in an alcoholic blackout and that he does not remember what happened. Staael's theory of defense was that "diminished capacity" precluded a finding of the specific intent necessary for an attempted murder conviction.

During his first trial Staael's jury was instructed on attempted first-degree murder and a number of lesser-included offenses. After deliberations the jury sent the trial court a note indicating that it was unable to reach a verdict on the attempted murder charge. The judge inquired wheth-

er the jury felt that further deliberation on that charge would result in a verdict. A juror replied that he did not think it would. The judge then told the jury to consider the four lesser-included offenses. The jury retired to deliberate. It later sent a note:

> Some of the jurors believe the defendant is guilty of the first charge (not all the jurors).
>
> If a unanimous guilty verdict on a lesser charge is found, does that relieve the defendant from the greater charge?
>
> The jurors feel since the vote was not unanimous they are placed in a position of being forced to plead, in effect, not guilty on the first charge, in order to look at the second charge.

Superior Court Judge Gerald J. Van Hoomissen rescinded his earlier instruction and told the jury that it had to unanimously acquit Staael on the attempted first-degree murder charge before moving on to lesser-included offenses. The jury then indicated that it could not arrive at a verdict on the attempted first-degree murder charge. Judge Van Hoomissen declared a mistrial over defense objection.

At his second trial Staael introduced expert testimony in support of his diminished responsibility defense. He called Dr. George Harris to testify about the physiological and psychological effects of an alcoholic blackout. Dr. Harris stated that, based on two interviews with Staael, review of the transcript from Staael's prior trial, and his general expertise in the area of alcoholism:

> My opinion is that on a more probable than not basis Mr. Staael had interference in his mental functions that was sufficient to impair his mental ability and impair his ability to formulate a specific intent.

After Dr. Harris testified, defense counsel asked for permission to call several lay witnesses to testify about alcoholic blackouts. The judge denied Staael permission to put on this evidence. The court understood that Staael's witnesses' testimony would be offered to support an inference that Staael was unable to formulate a specific intent to kill at the relevant time. The court reasoned that the offer of proof did not establish that the expected testimony would be relevant for this purpose. The court assumed that the existence of a phenomenon called "alcoholic blackouts" was not in dispute. The judge reasoned that testimony by lay witnesses that on occasion they had drunk themselves into a state during which they did not remember what they had been doing would not have been relevant to show that Staael was unable to formulate an intent at the time in question.[1]

At sentencing the trial court found one mitigator: that Staael's previous conviction (a felony burglary) was a less serious crime than the present offense. Former AS 12.-55.155(d)(8); repealed effective October 1, 1983, section 42, Ch. 143, SLA 1982. At the hearing on mitigating factors Judge Van Hoomissen originally stated that he would not find this mitigator because it was repealed. At defense counsel's request Judge Van Hoomissen reconsidered this ruling and concluded that a sentencing factor could not be eliminated *ex post facto*. The court nevertheless expressed strong disagreement with what he perceived to be the policy behind the mitigating factor. The judge reasoned that a person whose criminality became more serious should not get a benefit and concluded that the mitigator should receive very little weight.

---

1. Staael's offer of proof was as follows:

 All of these people have had alcoholic blackouts, whether twenty or a hundred and from different time periods. What I was calling them for was to verify the existence of the alcoholic blackout and to demonstrate to the members of the jury that there is such an animal. I think that—we submit that the evidence is admissible because it certainly is relevant and helps the jury in determining issue of fact, whether there are alcoholic blackouts, and we think that this [falls], for analysis purposes, within the limits of *Handley v. State*, 615 P.2d 627. We think that it's—their testimony would be critical to helping Mr. Staael with the defense of diminished capacity and we submit that not allowing the testimony is error.

## DISCUSSION

### I. DOUBLE JEOPARDY

■ If a court discharges a jury without a verdict being reached, the defendant cannot be retried unless he consented to the discharge or "manifest necessity" required it. *Koehler v. State*, 519 P.2d 442, 448 (Alaska 1974). Where a jury announces an inability to agree, a determination of "manifest necessity" can only be made where there is "no probability" that a unanimous verdict will be reached. In *Koehler* the supreme court stated that a trial court exercising discretion to determine whether a mistrial should be declared need not make an express finding of manifest necessity. However, it cautioned, the record must clearly support the trial court's implicit finding of "no prospect of an agreement." *Id.* at 449. In reaching this conclusion, the *Koehler* court recommended that a trial court consider the ABA standards:

> The ABA Project on Standards Relating To Trial By Jury recognizes that discharge of the jury is not permitted merely because jurors report they have not been able to agree. The ABA suggests that whether there exists a probability of agreement should be determined by (1) questioning the jurors as to their inability to agree without any attempt on the trial judge's part to ascertain how the jurors stand on the question of innocence or guilt and (2) considering the length of the deliberations, the length of the trial, and the nature or complexity of the case.

*Id.* (footnote omitted).

Staael does not question the probable inability of his first jury to agree on the charge of attempted first-degree murder. He implicitly concedes that if that was the only charge before the jury Judge Van Hoomissen's decision to grant a mistrial would have been proper under both the state and federal constitutions. He argues, however, that the situation is substantially different where the jury is instructed about lesser-included offenses in addition to the principal offense charged. In Staael's view, where jury agreement as to the principal offense cannot be established, a strong possibility of agreement on a lesser-included offense may still remain, and because it cannot be said under these circumstances that the jury is unable to agree on any verdict at all, a finding of manifest necessity cannot be met. Staael relies on *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In *Green* the Supreme Court noted that the constitutional prohibition against "double jeopardy" was designed to protect a defendant from being subjected to the hazards of trial and possible conviction more than once for an alleged offense:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

355 U.S. at 187–88, 78 S.Ct. at 223, 2 L.Ed.2d at 204.

Staael views this language as support for his theory that an ability to agree on a lesser-included offense precludes finding a "manifest necessity" warranting the discharge of a jury unable to agree on the proper disposition of the principal offense. Staael acknowledges that we rejected a closely related argument in *Hughes v. State*, 668 P.2d 842 (Alaska App.1983), in which we held that a jury's expressed inability to reach a verdict on a greater offense, resulting in a mistrial as to that offense, did not bar a subsequent trial on that offense even though the trial court entered a verdict on a separately charged lesser-included offense. Staael argues that *Hughes* was wrongly decided and cannot be reconciled with *Green*. He relies primarily on the following language from the *Green* decision:

Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. *But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any expressed verdict on that charge and without Green's consent.* Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense.

*Green,* 355 U.S. at 190–91, 78 S.Ct. at 225, 2 L.Ed.2d at 206 (emphasis added; footnotes omitted).

Staael concedes that his jury's expressed inability to reach a verdict on attempted first-degree murder precludes a finding of implied acquittal. He nevertheless argues that *Green's* alternate holding applies and that the alternate holding is irreconcilable with *Hughes.*

■ We are satisfied that Staael has misunderstood the alternate holding of *Green* which simply articulates in another way the legal propositions recognized in *Koehler v. State;* namely, that if the court discharges the jury without a verdict being reached, the defendant cannot be retried unless he consented to the discharge or manifest necessity required it. The jury's silence regarding the greater charge does not establish manifest necessity in the absence of an express determination whether it is hung on that charge. *See Sweetwine v. State,* 42 Md.App. 1, 398 A.2d 1262, 1264–65 (1979), *aff'd,* 421 A.2d 60 (Md. 1979), *cert. denied,* 449 U.S. 1017, 101 S.Ct. 579, 66 L.Ed.2d 477 (1980) (interpreting *Green* in this way). As long ago as 1898 the United States Supreme Court considered the issue of a jury's returning a verdict on some counts in an indictment but failing to decide other counts in the indictment. The Court distinguished between a jury's silence regarding a greater offense and its expressed inability to return a verdict on the greater offense. *Selvester v. United States,* 170 U.S. 262, 18 S.Ct. 580, 48 L.Ed. 1029 (1898). In *Selvester* the Supreme Court upheld receipt of a partial verdict in criminal cases and rejected the common law rule to the contrary. In reaching its conclusion the Court distinguished *Dealy v. United States,* 152 U.S. 539, 14 S.Ct. 680, 38 L.Ed. 545 (1894), in which it had previously held that the reception of a verdict on an indictment containing numerous counts was valid even though the verdict failed to address one count. In *Dealy* the Court reasoned that jury silence regarding a count was the equivalent of a verdict of not guilty regarding that count. 152 U.S. at 542, 14 S.Ct. at 681, 38 L.Ed. at 546. The *Selvester* Court said:

> The statement in the opinion in the *Dealy* case to which we have already referred and cited, that the silence of the verdict as to a particular count "was equivalent to a verdict of not guilty as to that count," when properly understood, does not lend itself to the construction which the argument seeks to place upon it. The contention arises from a failure to observe the difference between discharging a jury on mere silence on their part as to the guilt or innocence of an accused as to a particular count, and doing so only after a formal disagreement, and its entry of record. Doubtless, where a jury, although convicting as to some, are silent as to other counts in an indictment, and are discharged without the consent of the accused, as was the fact in the *Dealy* case, the effect of such discharge

is "equivalent to acquittal," because, as the record affords no adequate legal cause for the discharge of the jury, any further attempt to prosecute would amount to a second jeopardy, as to the charge with reference to which the jury has been silent. But such obviously is not the case, where a jury have not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record. The effect of such entry justifies the discharge of the jury, and therefore a subsequent prosecution for the offense as to which the jury has disagreed and on account of which it has been regularly discharged, would not constitute second jeopardy.

170 U.S. at 269, 18 S.Ct. at 582–83, 42 L.Ed. at 1032.

While this language from *Selvester* is clearly *dicta*, it nevertheless was reasoned *dicta* since it prompted a three-judge disagreement. The *Selvester dictum* has been frequently cited in the intervening years and no court has expressed doubt as to its continuing validity. *See, e.g., Wallace v. Havener,* 552 F.2d 721, 724 (6th Cir.1977); *Stone v. Superior Court of San Diego County,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809, 819 (1982). In summary, *Hughes v. State,* 668 P.2d 842 (Alaska App.

1983), simply applies the *Selvester dictum* to a concrete fact situation; since *Selvester* and *Green* are not inconsistent it necessarily follows that *Hughes* and *Green* are not inconsistent. Support for this interpretation of *Green* is found in *Ohio v. Johnson,* —— U.S. ——, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Johnson was charged *inter alia* with murder and over the state's objection was permitted to plead guilty to the separately charged lesser-included offense of manslaughter. The state sought to prosecute for murder, but the state courts accepted Johnson's claim of double jeopardy. The Supreme Court disagreed and held that trial for murder as part of a single continuing prosecution was not barred by prior conviction based on a plea to a lesser-included offense. —— U.S. at ——, 104 S.Ct. at 2542, 81 L.Ed.2d at 435.

■ We recognize that the United States Supreme Court has held that where a defendant has been tried and convicted of a lesser-included offense he cannot be subsequently tried in a separate prosecution for the greater offense without violating double jeopardy. *See, e.g., Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).[2] In *Brown* the Supreme Court specifically limited its holding to separate prosecutions stating:

2. While there is authority for the proposition that one acquitted of a greater offense cannot be separately tried for a lesser-included offense, *see Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), it is well established that a defendant may be retried when a hung jury results in a mistrial. *Richardson v. United States,* —— U.S. ——, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Whether acquittal of a greater offense and a hung jury on a lesser-included offense precludes retrial of the lesser offense has led to a split in authority, but the better-reasoned cases, which constitute a majority of those considering the issue, hold that retrial on the lesser offense is not barred. *See United States v. Gooday,* 714 F.2d 80 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3587, 82 L.Ed.2d 884 (1984); *United States v. DeVincent,* 632 F.2d 155 (1st Cir.1980), *cert. denied,* 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981); *Forsberg v. United States,* 351 F.2d 242 (9th Cir.1965), *cert. denied,* 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966); *Stone v. Superior Court,* 31 Cal.3d 503, 183 Cal.Rptr. 647, 646 P.2d 809, 820–22 (1982). *Cf. United States v. Larkin,*

605 F.2d 1360 (5th Cir.1979), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (1980), *modified on rehearing,* 611 F.2d 585 (1980) (defendant indicted for greater offense and convicted of lesser-included may be retried for lesser-included when conviction is reversed on appeal); *Edmonds v. United States,* 273 F.2d 108 (D.C.Cir.1959), *cert. denied,* 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960). These cases reason that *Brown* applies only when the government could have tried the greater and lesser offenses in a single proceeding but did not do so. *See Jeffers v. United States,* 432 U.S. 137, 150–52, 97 S.Ct. 2207, 2215–217, 53 L.Ed.2d 168 (1977). When a defendant is charged with two offenses in a single proceeding, one of which is a lesser-included offense of the other, and the jury acquits on the greater offense but cannot reach a verdict on the lesser offense, double jeopardy does not bar retrial of the lesser offense except as required by rules of collateral estoppel. *See Ashe v. Swenson,* 397 U.S. 436, 442, 445–46, 90 S.Ct. 1189, 1193, 1195–196, 25 L.Ed.2d 469 (1970).

We are not concerned here with the double jeopardy questions that may arise when a defendant is retried on the same charge after a mistrial. . . .

432 U.S. at 165 n. 5, 97 S.Ct. at 2225 n. 5, 53 L.Ed.2d at 194 n. 5.

■ *Brown* and the line of cases it relies upon therefore reach a result which in Alaska is required by statute. AS 12.20.-040. As the supreme court noted in *Mead v. State*, 489 P.2d 738, 741 (Alaska 1971), this statute only applies to successive separate prosecutions, not multiple convictions in the same continuing prosecution. *Accord Ohio v. Johnson*, — U.S. at —, 104 S.Ct. at 2542, 81 L.Ed.2d at 435. *See also Richardson v. United States*, — U.S. —, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), where the Supreme Court held that an insufficiency of the evidence claim does not bar retrial following a declaration of a mistrial because of a hung jury. It reaffirmed that jeopardy does not terminate when the jury is discharged because it is unable to agree. The government, like the defendant, is entitled to resolution of the case by a verdict from the jury.

■ The view that a jury's inability to agree on a greater offense constitutes "manifest necessity" permitting discharge of the jury despite a potential ability to agree on one or more lesser-included offenses is supported by the great weight of authority. *See, e.g., A Juvenile v. Commonwealth*, 392 Mass. 52, 465 N.E.2d 240, 243–44 (1984); *People v. Avalos*, 37 Cal.3d 216, 207 Cal.Rptr. 549, 689 P.2d 121, 125–29 (1984).

In Staael's case the trial court found manifest necessity and discharged the jury when it could not reach a verdict on the principal offense. Retrial on that offense was not in violation of Staael's double jeopardy rights.

## II. TRANSITION INSTRUCTIONS

■ Staael next argues that the trial court erred during his first trial in requiring the jury to unanimously agree on acquittal of the greater offense before proceeding to a decision on the lesser-included offense. Staael reasons that the jury was unable to agree on the element which differentiated the greater from the lesser offenses but, if permitted, would have returned a verdict of guilty on one or more of the lesser-included offenses. Such a verdict, Staael continues, would have barred retrial on the greater offense under principles of double jeopardy. The court's instruction deprived him of this result, Staael concluded, and, consequently, the instruction given should be disapproved and the case treated as if the correct instruction had been given and a verdict on the lesser offense returned. Staael, in his view, may only be convicted of the lesser offense. We rejected Staael's double jeopardy argument in Part I of this opinion. The instruction given parallels the instruction suggested in 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 18.05 (3d ed. 1977) ("So, if the jury should unanimously find the accused 'Not Guilty' of the crime charged in the indictment (information) then the jury must proceed to determine the guilt or innocence of the accused as to any lesser offense which is necessarily included in the crime charged."). Staael concedes that we found such an instruction appropriate in *Nell v. State*, 642 P.2d 1361 (Alaska App.1982), but argues that *Nell* is consistent with a rule that would give a defendant an election between a transition instruction that would require the jury to decide the greater offense before proceeding to the lesser and one which would permit the jury in its discretion to consider the lesser-included offenses first. *See, e.g., United States v. Jackson*, 726 F.2d 1466 (9th Cir.1984); *United States v. Tsanas*, 572 F.2d 340 (2d Cir.), *cert. denied*, 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978). Staael argues that the *Nell* decision should apply only in those cases where the defendant has failed to request the alternate transition instruction or object to the giving of the instruction proposed in Devitt & Blackmar. If Staael were correct, his objection to the *Nell* instruction, which was not made in the first trial until the jury indicated an inability to agree, came

too late. *See United States v. Harvey*, 701 F.2d 800 (9th Cir.1983) (defendant waives *Tsanas* election unless he voices it before jury retires to deliberate); *see also Tsanas*, 572 F.2d at 347.[3]

We therefore decline to reconsider *Nell* at this time.

### III. LAY TESTIMONY

■ Staael next argues that his defense strategy was to show that an alcoholic blackout prevented him from formulating an intent to kill,[4] that the existence of a phenomenon called alcoholic blackouts remained a central disputed issue at trial, and that the trial court erred when it rejected lay testimony which Staael offered to establish the existence of alcoholic blackouts. He argues that the state's expert witness, Dr. Joseph O'Lone, testified that the term "blackout" can mean different things to different people and that he did not have a clear idea of what Staael meant by the term. Dr. O'Lone said that he believed that alcohol blackouts exist, but that he did not believe that Staael was in an alcoholic blackout at the time of the offense. This testimony Staael contends created a conflict with Dr. Harris' testimony, which lay testimony would have helped the jury to resolve. *Cf.* Alaska Rule of Evidence 701 (opinion testimony by lay witnesses). We disagree.[5]

Dr. Harris and Dr. O'Lone agreed that alcohol blackouts exist in the sense that people could drink to the point of memory loss. They disagreed about whether an alcoholic blackout is a psychiatric disorder or simply an extension of the loss of motor control and memory that often accompanies intoxication. The proposed lay testimony would not have resolved or shed any light on that dispute. Staael's witnesses would merely have testified that after excessive drinking they had no memory of intervening events. The lay testimony would not prove that Dr. Harris' opinion on the nature of a blackout was more true than Dr. O'Lone's, and it would not have made it more or less probable that Staael was unable to formulate an intent to kill at the time the shooting occurred. The trial court did not err in excluding it. A.R.E. 401, 403.

### IV. SENTENCING ISSUES

Attempted first-degree murder is a class A felony. AS 11.41.100(b); AS 11.31.-100(d)(1). Staael was subject to a ten-year presumptive sentence as a second felony offender. AS 12.55.125(c)(3). He received that sentence. His sole objection on appeal is that the trial court gave insufficient consideration to former AS 12.55.155(d)(8), the mitigating factor that his prior felony of burglary was a less serious crime than the present offense.

Our revised criminal code, including its sentencing provisions, is based in part on a tentative draft prepared by the Criminal Code Revision Commission. The tentative draft limited presumptive sentencing to those convicted of crimes of the same or

---

3. In *Dresnek v. State*, 697 P.2d 1059 (Alaska App.1985), we reconsidered *Nell* and recommended that trial courts make it clear in their instructions that the jury is free to consider greater and lesser-included offenses in any order it wishes but cannot return a verdict on an included offense unless it acquits of the greater offense.

 Having reviewed the record in this case we are satisfied that there was no risk of jury confusion about the relationship between the various offenses and consequently no risk that the first jury was coerced into a verdict. In fact the first trial resulted in a mistrial, not a conviction.

4. Alaska Statute 11.81.630 provides:

 *Intoxication as a defense.* Voluntary intoxication is not a defense to a prosecution for an offense, but evidence that the defendant was intoxicated may be offered whenever it is relevant to negate an element of the offense that requires that the defendant intentionally cause a result.

 Staael's blackout defense is a version of the unconsciousness defense. *See O'Leary v. State*, 604 P.2d 1099, 1103–04 (Alaska 1979). *See also* AS 11.81.600 (criminal responsibility requires at a minimum a voluntary act or omission).

5. Staael's reliance on *Handley v. State*, 615 P.2d 627 (Alaska 1980), is misplaced. There the court held that the trial court improperly excluded relevant expert testimony. Here the trial court excluded irrelevant lay testimony.

more serious class of offense. Alaska Criminal Code Revision Part VI, at 8 (Tent. Draft 1978). The subcommission justified limiting presumptive sentencing in this way as follows:

> The Subcommission concluded that if the offender had been convicted previously of the same or a more serious class of offense, he more likely would have been alerted to the seriousness of his conduct than he would have been had the prior conviction been for a less serious offense. Having failed to learn from the prior experience, it would be fair to conclude, as did the Subcommission, that the person "justly deserved" no further breaks.

*Id.* at 71–72.

The subcommission thus reasoned that a person convicted of the same or a more serious offense would have previously received a sentence appropriate to the current offense and that that sentence would give some indication of the defendant's amenability to deterrence and rehabilitation. Conversely, a conviction of a less serious prior felony might well result in a very lenient sentence that would not test the defendant's amenability to deterrence and rehabilitation. The subcommission was thus applying the same reasoning that has led the Alaska Supreme Court to conclude: (1) that in the absence of extraordinary circumstances a term of imprisonment should not be imposed on a person convicted of a property offense unless he has been exposed to probationary supervision in the past and failed to learn from that experience, *see, e.g., Leuch v. State,* 633 P.2d 1006, 1013–14 (Alaska 1981); and (2) that a person should not be treated as an habitual criminal unless he had an opportunity to benefit from probationary supervision in the interval between convictions. *State v. Carlson,* 560 P.2d 26 (Alaska 1977); *see also State v. Rastopsoff,* 659 P.2d 630 (Alaska App.1983).

 The legislature rejected this reasoning in part and made presumptive sentencing applicable to all those convicted of prior felonies. However, it carried over the subcommission's philosophy in part by creating an aggravating factor where the defendant had been previously convicted of a more serious offense and a mitigating factor where the defendant had been previously convicted of a less serious offense. *See* AS 12.55.155(c)(7) and former AS 12.55.155(d)(8). In Staael's case, the trial court did not understand the legislature's reasons for adopting the mitigating factor. We nevertheless find that any error was harmless. As we noted in *Juneby v. State,* 641 P.2d 823 (Alaska App.1982), *modified on rehearing,* 665 P.2d 30 (Alaska App. 1983), finding an aggravating or mitigating factor does not necessarily require an adjustment of the presumptive sentence. The trial court must still consider the reasons behind the mitigator or aggravator in light of the totality of the circumstances in determining whether an adjustment should be made. As the supreme court noted in *Leuch v. State,* a defendant's past criminal record and experience with the criminal justice system is less significant in sentencing for crimes against the person than it is in sentencing for crimes against property. *Leuch,* 633 P.2d at 1013. The supreme court reasoned that deterrence of others and affirmation of community norms are more significant standards in cases of criminal violence. Judge Van Hoomissen clearly considered the mitigator, but gave it little weight because he independently decided to stress general deterrence and affirmation of community norms. Given the nature of Staael's crime, that decision was appropriate. The sentence imposed was not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The judgment and sentence of the superior court are AFFIRMED.